Tyree v. Bingham.

---

TYREE *et al., Appellants,* v. BINGHAM *et al*

1. **Private Charitable Corporation:** WIDOWS AND ORPHANS' HOME SOCIETY OF MISSOURI. The Widows and Orphans' Home Society of Missouri, incorporated under an act of the legislature, approved March 19, 1866 (Laws, p. 69), is a private corporation created for such charitable or benevolent purposes as are set out in the articles of association.

2. **Public Charity.** It is not in a legal sense a public charity.

3. **Private Charitable Corporation:** QUO WARRANTO : STATUTE. The attorney general or circuit attorney is the proper person under Revised Statutes, 1879, section 984, to institute proceedings by *quo warranto* against such corporation for the misappropriation of its funds, and to charge the attorney general or circuit attorney with this duty written complaint against the corporation should be made to him by some credible person as required by said statute.

4. ———: EQUITY. A court of equity cannot exercise the powers conferred by said statutory provision, and this is true even though the bill is filed by individual members of the association, and the attorney general is made a party defendant.

*Appeal from Jackson Circuit Court.* — HON. T. A. GILL, Judge.

AFFIRMED.

*C. O. Tichenor* for appellants.

(1) The fund in controversy was a charity. *Vidal v. Girard's Exr's*, 2 How. 128; *Jones v. Williams*, Ambler, 652; *Hist. Soc. v. Academy of Science*, 94 Mo. 466. (2) The proceeding by information, in case of charities, was originated, not from necessity, but by a court of equity, in the face of a statute giving an express remedy. *Hist. Soc. v. Academy, etc.*, 94 Mo. 466; *Howe v. Wilson*, 91 Mo. 49. (3) The reasons given, whereby the attorney general came to act, do not obtain in this country, and, while he can so act, no doubt, it is by reason of the ordinary powers of a court of equity. (4) When he did act he was a mere figure head, doing nothing and of no use to the court. He called attention, it may be, to the majesty of the king or queen, but that was all; the instrument called an information was not required to be drawn in legal shape; anything did, even though it did not describe the charity. He was simply a starting post; a role, we submit, he could fill as a defendant, as well as if a plaintiff. And we call

Tyree v. Bingham.

attention to the fact that the leading cases, in this country at least, have been determined, without even the presence of the attorney general. (5) Said officer is now no greater (if so great) than when he reflected the glory of the king. If he could then be ordered to be a defendant and in such manner represent the king, why not now, especially in view of our statute? Is it true that an attorney general can from caprice or because of the influence of the wrongdoer refuse to be a party and so end all such suits as this? If so, he is supreme. He has it in his hands to bestow charities to others than those had in view by donors. (6) The question is new, we admit. So far in the history of our jurisprudence no attorney general before has refused to lend his name to protect a charity. (7) The attorney general does not plead. Defendant Bingham does not demur because of defect of parties. "A demurrer for want of parties must show who are the necessary parties, in such a manner as to point out to plaintiff the objection to his bill, so as to enable him to amend by adding proper parties." 1 Dan. Ch. Pr. 586. (8) Plaintiffs do not ask the court to direct the management of a charity, or the conduct of the trustees. They do not question the powers or rights of the corporation. They do not ask the court to manage the finances of the corporation, or to distribute the same. They do not claim to own the fund, or any interest in the same, or that it can be theirs under any circumstances. They ask that the charity may not be destroyed; that the funds be either restored to the corporation, or to be, by the court, distributed in some way as the donors intended. Because no case can be found exactly like this, is no reason why plaintiffs should be dismissed. The court said, in *Railroad v. Schuyler*, 17 N. Y. 595, "This case is somewhat special and extraordinary in its circumstances and must be determined upon principles of reason and justice, with the aid of such analogies as

the law will afford." Equity will not suffer a right to be without a remedy, for this maxim is at the foundation of equitable jurisdiction. *Slattery v. St. L. & C. Co.*, 91 Mo. 225. (9) And it will make the remedy, when applied, complete. *Keeting v. Spalding*, 13 Mo. 321. (10) "But as a bill may be sustained by any of the individuals composing the society, to compel a proper application of the funds, the defendant must render an account of what he has received and what now remains in his hands, and it must be referred to a master to ascertain and report the amount. When this is ascertained, the charitable intention will then be carried into effect by decreeing," etc. In *Miller v. Gable*, 2 Denio, 492, the plaintiffs were a part of the trustees of a religious corporation. *Bowden v. McLeach*, 1 Edw. Ch. 558; *Lawyer v. Cipperly*, 1 Paige, 281. (11) Not only were these members trustees, but they were donors. By the terms of their agreement they not only gave, but were bound to give so long as they were members. This agreement was binding. The following proposition of law cannot be questioned : "If a number of subscribers promise to contribute money, on the faith of the common. engagement for the accomplishment of an object of interest to all and which cannot be accomplished, save by their common performance, then it would seem that the mutual promises constitute reciprocal obligations." *Christian v. Hendley*, 49 Cal. 347; *Pitt v. Gentle*, 49 Mo. 74; *Warren v. The Mayor*, 22 Iowa, 355, 357.

*W. J. Ward* also for appellant.

(1) The statutes do not provide any special remedy in this case for plaintiffs and they are compelled to seek it in equity. (2) The charter of the defendant was unquestionably violated when a majority of the members gave its entire funds to the defendant, Mrs. Bingham. *Duke v. Fuller*, 9 N. H. 536; *Penfield v.*

*Skinner*, 11 Vt. 296; *State v. Adams*, 44 Mo. 570; *McRoberts v. Moudy*, 19 Mo. App. 26. (3) The charter or constitution of a corporation is a contract between its incorporators and members. Morawetz on Corp., secs. 425 and 255; *Black v. Railroad*, 24 N. J. Eq. 455; *Dartmouth College Case*, 4 Wheat. 689. (4) When a majority of the members of a corporation in control of the corporation misapply its funds in violation of its charter by an act that a majority could not ratify, the minority members have a right to bring an action against the corporation and any one or all of the majority to correct the abuse without any demand on the corporation to sue. Morawetz on Corporations [1 Ed.] secs. 366, 389, 390, 391, 392, 395 and 403; *Brewer v. Boston P.*, 104 Mass. 378; *Heath v. Railroad*, 8 Blatchford, 347; *Seaton v. Grant*, 2 Chancery Appeal Cases, 459; *Bagshaw v. Railroad*, 7 Hare, 114; *Atwool v. Meriweather*, 5 Law Report Equity, 464; *The Board v. Railroad*, 50 Ind. 115; *Marsh v. Railroad*, 40 N. H. 548; *Slattery v. St. Louis, etc., Co.*, 91 Mo. 217. (5) Every member of a corporation has an interest in its perpetuation for the purpose for which it was created, and the parties plaintiff have a right to have this charity continued for the benefit of the widows of Missouri's Confederate soldiers, and have a right to prevent its funds being destroyed, so that it may be continued. (6) The defendant corporation is a private charitable corporation. *Dartmouth College Case*, 4 Wheat. 518; *State to use v. Adams*, 44 Mo. 570; Angell and Ames on Corporations [8 Ed.] secs. 39 and 687; *Protestant Ep. v. Churchman*, 80 Va. 718; *Allen v. McKean*, 1 Sumner, 276; *Phillips v. Bury*, 2 Term. Rep. 352. (7) The parties plaintiff, as the donors of the first funds of the defendant corporation, possess the visitorial right. *Phillips v. Bury*, 2 Term Rep. 346, 352; *Greene v. Rutherford*, 1 Ves. Sen. 462; *Dartmouth College Case*, 4 Wheat., pp. 673 and 674; *Allen v.*

*McKean*, 1 Sumner, p. 300. (8) The plaintiffs are trustees of an express trust. Trustees have a right to bring an action against other trustees to correct the abuse or misapplication of the trust. *Morrell v. Fowle*, 144 Mass. 109; *Ward v. Hipwell*, 3 Gifford, 547; *Marshall v. Coldwell*, 125 Mass. 435; *Bartlett v. Hatch*, 17 Abb. Pr. 461; *Greenville Acd. Case*, 7 Rich. Eq. 471; 2 Eq. Ca. Ab. 167; *Dartmouth College Case*, 4 Wheat., pp. 630, 703 and 704. (9) The courts of Missouri have jurisdiction over charities. *Chambers v. St. Louis*, 29 Mo. 543; *Russell v. Allen*, 107 U. S. 163; *Howe v. Wilson*, 91 Mo. 45; *Protestant Ep. v. Churchman*, 80 Va. 718. (10) Parties other than the attorney general can bring an action to enforce a charity. 2 Eq. Ca. Ab. 167; *Chambers v. Baptist Ass'n*, 1 B. Mon. 222; *Penfield v. Skinner*, 11 Vt. 296; cases cited in the note in the case of *Vidal v. Girard*, 2 How., p. 151, and especially the cases of *Babington v. Gaul, Wakering v. Bale, Lyon v. Howe & Kemp, Hall v. Pankee, Blenkinsoper v. Anderson.* These cases are all given in full in the note. *Bromley v. Smith*, 1 Simon, 8. (11) The state having an interest in the proper administration of charities, she is properly represented when the attorney general is a party defendant. *Jackson v. Phillips*, 14 Allen, pp. 544, 579; *Wellbeloved v. Jones*, 1 S. & S. 40; *Harvard College v. Society*, 3 Gray, 280; *Theological S. v. Attorney General*, 135 Mass. 285.

*Karnes, Holmes & Krauthoff, Scammon & Stubenrauch, Dodson, Douglass & Trimble* and *Bingham, Adams & Taylor* for respondent.

(1) The home was not a public charity, and for this reason the plaintiffs have not the legal capacity to sue. *Blanford v. Fackerell*, 4 Brown's Chan. 394; *Attorney General v. Hewer*, 2 Vern. 387; *Babb v. Reed*, 5 Rawle, 151; *Attorney General v. Proprietors of the Meeting House, etc.*, 3 Gray, —; *Harrison v. Southcote*,

Tyree v. Bingham.

3 Atk. 277. (2) If the trust set out in the petition is held by the court to be a charitable use, then the suit is brought in by the wrong party. It can only be prosecuted by the attorney general, at his discretion. *Vidal v. Girard*, 2 How. [U. S.] 127; *Girard v. Philadelphia*, 7 Wallace, 1; *Parker v. May* [1850], 5 Cush. 336; *Jackson v. Phillips*, 14 Allen, 540. (3) Again, if the trust set forth in the petition be a charitable one, then, under the statutes of this state, the suit must be prosecuted in the name of the attorney general. (4) The plaintiffs' claim, that because they gave money to the corporation, in consideration of which the corporation promised to apply the money to the relief of the widows and orphans, that they, the plaintiffs, as parties to the contract, are entitled to maintain a suit to enforce the performance thereof, is not good, because they have no material interest in the performance of the contract or trust which they allege has been violated. *Culbertson v. Matson*, 11 Mo. 493–507; *Hayles v. Farmer*, 58 Ga. 324; *Levy v. Hart*, 54 Barb. 248; *Tucker v. Palmer*, 3 Brevard [S. C.] 47; *Kemper v. Trustees*, 17 Ohio, 293. (5) The corporation, and not the members, was the trustee of this fund. *Greene v. Rutherford*, 1 Ves. Sr. 462; *Attorney General v. Landerfield*, 9 Mod. Rep. 286; *Chambers v. City of St. Louis*, 29 Mo. 543; *Vidal's Heirs v. Girard*, 2 How. 127. (6) These plaintiffs had no visitorial power over this corporation. *Greene v. Rutherford*, 1 Ves. Sr. 462; *Phillips v. Bury*, 2 T. R. 346; *Sanderson v. White*, 18 Pick. 334; *Pittman v. Adams*, 44 Mo. 579. (7) The statute affords a complete remedy for the wrongs complained of in this petition. *Conner v. Railroad*, 59 Mo. 293; *State ex rel. v. Dibeling*, 66 Mo. 379; *Seldon v. Hall*, 21 Mo. App. 452.

BRACE, J.—This is an appeal from the judgment of the circuit court of Jackson county sustaining the demurrer of defendant Bingham to plaintiffs' second

amended petition and dismissing the same. The defendants are Martha A. Bingham, The Widows and Orphans' Home Society of Missouri, and B. G. Boone, Attorney General. The second amended petition states that the attorney general is made a party defendant, because he has refused to become a party plaintiff. Its material allegations are as follows :

"That, on the twenty-first day of March, 1867, the said Widows and Orphans' Home Society of Missouri, was duly incorporated under the laws of said state as a benevolent and charitable association, the objects and purposes of which were 'to provide a home for the orphans and widows of Confederate soldiers from Missouri, who perished in the late war, and to provide the means of feeding, clothing and imparting moral, religious and intellectual instructions to the same, with suitable and proper training in all the domestic and mechanical arts, as well as to provide for their thorough literary training; and, by all practical means, to insure their comfort and well being.'

"That said association, at the time of its incorporation, was composed of thirty members, the following named plaintiffs being a part of the said thirty, that is, Laura Holmes, William Holmes, John B. Wornall, Rebecca Maupin, Sarah T. Ruckle, and Julia Lester; and that plaintiffs, Sarah Tyree, Emily A. Carroll, Julia E. Simpson, and T. B. Lester afterwards became members of said association, under its laws and regulations regarding membership.

"That said named plaintiffs are still members of said society. That the articles of association of said society provided that a board of managers should be elected to conduct its business, consisting of thirty ladies chosen from the members, nine of whom should reside in Kansas City, and the majority of said nine residents of Kansas City should constitute a quorum to transact business.

Tyree v. Bingham.

"Said articles of association further provided that each subscriber thereto, by the payment of one dollar monthly, to the funds of the society, should be a member, either male or female; but no male member should be eligible to any place or office in the management of the same, except as trustee, or as member of the advisory committee, and male members should not be allowed to vote.

"Said plaintiffs further state that the said society and the members thereof, immediately after its incorporation in order to execute the purposes of its organization, received and collected from its members the monthly payments, provided for in said articles of association as aforesaid, and through its corresponding secretary and its officers and agents, whom it sent throughout the state of Missouri, solicited and received large contributions in clothing, money, lumber, fuel, provisions, drugs and medicines, from the churches, Sunday schools and various charitable and benevolent persons, not only in said state, but in the different parts of the United States.

"That said society also collected and received a large amount of money by establishing a dining hall at the annual fairs at Kansas City, Missouri, where meals and victuals were furnished by the society for pay to the visitors at such fairs, the provisions and supplies used on such occasions having been donated to said society by the citizens of Kansas City and vicinity.

"That with a part of the money thus collected by said society it purchased the following described real estate situate in Jackson county, in the state of Missouri, to-wit: The northwest quarter of the southeast quarter of section seventeen (17), in township forty-nine (49), range thirty-three (33), and erected thereon buildings and other improvements for the accommodation and comfort of the widows and orphans aforesaid.

"Said society used also a part of the funds so collected, as well as a part of the clothing and other

donations to it, in supporting and caring for those who were received and cared for by said society at different times, from the time of the incorporation of said society until about March 12, 1874, when the state of Missouri expended large sums of money in erecting buildings upon said property, to-wit: The sum of twenty-six thousand dollars, and fourteen thousand dollars more was expended by the state in furnishing said buildings and other personal property to be used in and about said property.''

The petition then alleges in substance that the defendant, Mrs. Bingham, from the organization of said society, was one of its principal officers; that on the eleventh day of November, 1877, through her influence over the members of said society, she induced it to execute a deed of trust in her favor for fifteen hundred dollars upon said real estate, and afterwards on the fourth day of June, 1878, induced said society to execute a second deed of trust in her favor for fifteen hundred and thirty dollars. That said sums and interest thereon becoming due and remaining unpaid she caused the same to be sold by the trustee on or about the twenty-sixth of May, 1881; that at such sale said property brought the sum of twenty-five thousand, one hundred and seventy-five dollars, and that after payment of the claims of the said defendant there remained in the hands of the trustee the sum of $20,890.97. That at the time of the sale of the said real estate the said defendant Bingham was treasurer of said society, and as such, on the day after such sale, received from the trustee said remainder, and afterwards in the month of June in the same year the said money was voted to her as a gift by said society. That as soon as the members of said society had voted said money to the defendant Bingham they immediately declared said society disbanded and adjourned, and from that day there has been no meeting of said society. That with a part of the money so received by the said defendant

Tyree v. Bingham.

Bingham she purchased certain real estate in the City of Kansas described in the petition. That said defendant by fraud and undue influence exercised upon said society, through a majority of its members, managers and officers, caused such donation of said fund to be made to her. That the purposes for which the gifts to said society were made can be still carried out, as there are now living many widows of Confederate soldiers of Missouri who perished in the late war; and prays the court to compel said defendant Bingham to account for said sum so donated to her by said society together with its proceeds and interest, and that said described real estate in which it is alleged a part of said fund was invested by said defendant Bingham be declared the property of said society. That judgment be rendered against said defendant Bingham for the amount of said fund over and above the amount expended for said property. That a receiver be appointed for all of said funds and property, with instructions to pay the same to the widows of the Confederate soldiers of Missouri, there being no orphans now, and for general relief.

The question raised by the demurrer, decided by the trial court, and argued here on appeal is, does the petition state a cause of action in favor of the plaintiffs against the defendant Bingham?

The Widows and Orphans' Home Society of Missouri was incorporated under an act approved March 19, 1866. Sess. Acts, 1866, p. 69. The entity created by an incorporation under this act, in contemplation of law, is a private corporation for such charitable or benevolent purposes as are set out in the articles of association. The character of the corporation in this case, as it appears from the allegations of the petition, is in conformity with this ideal. The object and aim of this association was to raise a fund to be appropriated to the benefit of a particular class of persons in existence, limited in number, capable of definite ascertainment, and who never had, and, probably, never would,

become a charge upon the state. There is nothing in the terms of the law creating this corporation, in its articles of association, so far as disclosed by the petition, the character of its beneficiaries, or the methods adopted for securing to them the benefits of such organization, that would warrant its classification as a public charity. As a private corporation for charitable purposes, the relation that the state and attorney general sustained to it, when this suit was commenced, is defined by statute. By section 984, Revised Statutes, 1879, such corporation may be proceeded against by *quo warranto*, "by the attorney general or circuit attorney at the relation of any person desiring to prosecute the same, to inquire into any alleged unlawful acts of misuser or non-user of its franchise by such corporation," and "if, in any such proceedings, judgment of forfeiture or dissolution be rendered against such corporation, it shall be lawful for the court to provide, by such judgment, for the vesting of the property of such corporation, upon such dissolution or forfeiture, in a receiver, or receivers, to be appointed by the court, and in his, or their, successors in office."

The receiver thus appointed is authorized to administer upon the assets of such corporation, and, after payment of its debts, to distribute the remainder "among the persons who were members of such corporation at the time of such dissolution or forfeiture, or their legal representatives, in equal shares, unless, for good cause shown, the court shall otherwise order," provided, however, that "if, upon such dissolution or forfeiture, it shall appear that any property vested in said corporation was held by it upon trust for any charitable purposes" such property shall not be so distributed, but shall be vested in trustees for the charitable purposes for which such corporation held the same. This law made it the duty of the attorney general or circuit attorney, upon written complaint made

to him upon the affidavit of any credible person, showing reasonable cause to institute such proceedings. It does not appear from the allegations of the petition that any such complaint was ever made to the attorney general in regard to the corporation in question, or that he has ever become officially charged with any duty in respect thereof, and it is not perceived how making him a party defendant can in any way affect the nature of this proceeding, or the rights of the parties. The aid of the state to wind up the affairs of this corporation and distribute its, assets among its beneficiaries is not invoked, but, instead, the plaintiffs, as members of the corporation, and contributors to the fund, claim the right to call upon a court of equity to exercise its powers for that purpose, independent of the state, and, in face of the refusal of its representative upon their mere request, and upon their representation of the facts, to lend his countenance to the support of the proceeding. The power of the state, the creator of this corporation for benevolent purposes, is not invoked, nor has it ever been invoked in the manner provided by law to secure to its beneficiaries the charitable fund raised for them.

The controversy, in its present shape, is between private citizens in respect of private rights, and is governed by the general law regulating civil actions between private citizens. For the protection of those rights, whether formerly of legal or equitable cognizance, there is but one form of action, and every such action must be prosecuted in the name of the real party in interest, except that an executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue in his own name without joining with him the person for whose benefit the suit is prosecuted.

The petition fails to disclose any beneficial interest in the plaintiffs in the fund sought to be recovered in this action; in fact, counsel for plaintiffs frankly admit

in their brief, that "they do not claim to own the fund or any interest in the same, or that it can be theirs under any circumstances." No statute authorizes such a suit in their name; and if this action can be maintained by them, it is because they are "the trustees of an express trust." The trustee of an express trust as defined by statute is "a person with whom or in whose name a contract is made for the benefit of another." R. S. 1879, sec. 3463. According to the averments of the petition the widows of Confederate soldiers from Missouri, who perished in the late war, are the sole beneficiaries of the trust fund raised for them by the voluntary contribution of those who sympathized with their situation, and who were desirous of conferring upon them a benefit by means of this corporation. The mode selected by these plaintiffs and others to make their contributions to such fund was to become members of the corporation, created under the laws of the state, and to pay it certain monthly dues for that purpose; others contributed in indefinite amounts in money directly or in money raised by "tables at fairs," "entertainments" and such means as are frequently used to appeal to the benevolent instincts of a generous and prosperous people in behalf of a class of citizens who have been unfortunate. To the fund thus raised there is nothing in the petition that suggests the idea that the amount contributed by the plaintiffs in the way of monthly dues, or otherwise, was relatively so large as compared with the contributions of others as to give any color to the claim made for them by counsel that they, as founders of this charity and the donors of its funds have some right of a visitorial character that a court of equity ought to protect. As donors they stand upon the same plane in a court of equity with hundreds of others, who in the same and in other ways contributed to this same purpose. As donors to the fund they have no pecuniary interest in it. As members of the corporation no contract was made with them, or in their names, for the

benefit of another; the donations were made to the corporation; with the corporation the contract was made for the benefit of the widows and orphans of the Confederate soldiers of Missouri who died in the late war.

. That the fund was a charitable fund there is no question. That a court of equity will lend its powers to discover and secure it for the purposes for which it was donated, whenever it is called upon to do so by the proper parties, there can be no doubt.

The Widows and Orphans' Home Society of Missouri became the trustee of that fund, capable in law and equity of suing for, recovering and managing it for the purposes of the trust. That for such misuser, as is set out in the petition, it could be called to account by the attorney general, by virtue of the statute cited, and the interest of the beneficiaries protected by a receiver appointed in the *quo warranto* proceeding, who by suit could invoke the aid of a court of equity to protect that fund for their benefit against the trustee, or those dealing with it, no one will question. But that the plaintiffs are not trustees of that fund in their individual character simply because they were members of the corporation, and could not be called upon by any person interested in it to respond for its misappropriation by others than themselves is equally clear. And it follows that, not being trustees of and having no interest in the fund, except the sentimental one that every person who contributed to it may be presumed to have, that it should be applied to the purpose for which it was contributed, they have no such interest in the fund, and sustain no such relation to it, as to give them a cause of action for its misappropriation.

There is, of course, no analogy between the position of the plaintiffs in this case as members of a benevolent corporation without capital stock, and organized purely for the benefit of others, and the position of stockholders of a corporation organized for business purposes with

capital stock, and who, by reason of their pecuniary interest in the corporate property, may, in certain contingencies, by action protect such interest, and who have a right to sue, not because they are trustees, but because they have a pecuniary interest in the assets of the corporation.

The state of facts set forth in the petition show a cause of action in the trustee corporation in the beneficiaries of the trust fund, and a state of facts which would authorize the state to proceed by *quo warranto* for the dissolution of the corporation and the appointment of a receiver, by whom that fund could be recovered and appropriated to the beneficiaries of the trust. But the plaintiffs, not being trustees of that trust fund nor having any interest in the subject-matter of the action, it is not seen how their suit can be maintained, and the court committed no error in sustaining the demurrer. Judgment affirmed. All concur except BLACK, J., not sitting.