## Seitzinger et al. *v.* Becker et al., Appellants.

*Trusts and trustees—Real estate—Deeds — Charitable use — Income—Equity—Accounting.*

Where in a suit in equity for an accounting, it appeared that defendants were trustees for an unincorporated charitable association and had taken title to lands by deed which provided that the lands should be improved and managed and held for the sole purpose of a general cemetery for the use of the people of the vicinity, and that no discrimination should be made for or against any portion of the inhabitants, but the rules and regulations of said cemetery should be so framed as to secure equal rights and privileges to all of whatever sect, denomination, society, association or name; that plaintiffs were the owners of certain of the cemetery lots, and that the association had appropriated part of the amount received from the sale of lots in the tract and other income arising therefrom to the erection of halls and other buildings for the purposes of the association, a decree for an accounting of the funds received, and enjoining defendants from applying funds which they might receive in future from the sale of lots to other purposes than those mentioned in the deed, was proper.

Argued Feb. 12, 1917. Appeal, No. 232, Jan. T., 1916, by defendants, from decree of C. P. Schuylkill Co., Nov. T., 1911, No. 4, in equity, in the case of Jacob R. Seitzinger, John F. Boyer and John H. Stidfole v. Edward Becker, George McElwee and William Snavely, Trustees of Harmony Lodge, Number 86, of the Borough of Tamaqua, of the Independent Order of Odd Fellows of Pennsylvania. Charles Hodgkins, Harry Carter, W. A. Newton, John Schaffer, Andrew Schilbe, Harry Hinkley and Charles Kaercher, Trustees appointed by said Harmony Lodge for the management of its cemetery, and the said Harmony Lodge, Number 86, Independent Order of

Odd Fellows of Pennsylvania of the Borough of Tamaqua.  Before BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ.  Affirmed.

Bill in equity for an accounting, and for the removal of trustees.

After a hearing on bill and answer BRUMM, J., found the following facts and conclusions of law :

### FACTS.

On February 10, 1913, the deed from the Little Schuylkill Navigation, Railroad and Coal Company to James M. Hadesty et al., trustees. of Harmony Lodge, etc., as set forth in complainants' pleadings, was introduced, and its contents not disputed by respondents.

On same day was introduced the deed from the Odd Fellows Cemetery of Tamaqua, to John F. Boyer, one of the complainants, dated the 10th day of February, 1913, for lots Nos. 111 and 110 (with description), being a part of the tract of land which the Little Schuylkill Navigation, Railroad and Coal Company above mentioned, granted and conveyed to James M. Hadesty and others.

This deed and other testimony showed, that the complainants as originally named in this bill, had a special, individual interest in said cemetery as purchasers or heirs of purchasers of burial lots.  The acceptance of the trust under the deed was shown and admitted by respondents.

The said trustees of said Harmony Lodge have held, improved and managed said tract of land, for the purpose of a general cemetery for the use of the people of the Borough of Tamaqua and vicinity, but have acquired more money by the sale of lots, etc., than was necessary for that purpose, and have appropriated a large amount of money thus acquired, for the benefit of said Harmony Lodge of Odd Fellows, in the erection of buildings and other purposes wholly disconnected from and forming a part of said cemetery.

The complainants have withdrawn their claim as to any alleged discrimination in favor of General Doubleday Post; there is no other discrimination in favor of any portion of the inhabitants of the Borough of Tamaqua and vicinity, claimed.

While the respondents admit that they have applied certain moneys received from the sale of lots, to the cost of the erection of a building belonging to and used in connection with the charitable purposes of the respondents, they also alleged that they purchased five acres of land adjacent to the cemetery, for which they paid over four thousand ($4,000) dollars, and expended several sums in clearing and improving the same; and that they have taken up bonds amounting to seven thousand ($7,000) dollars, which were used by said Harmony Lodge to secure a loan for the erection of its hall on Broad street, Tamaqua; that they have invested nine thousand ($9,000) dollars in first class bonds, which are now in the possession of the treasurer of the respondent trustees, and that two thousand ($2,000) dollars of said surplus is in cash, which is now in the possession of said treasurer; that they raised a large sum of money by a fair held by said Harmony Lodge, and which money was exclusively devoted in improving said cemetery, etc., and sundry other financial transactions; all showing or tending to show, that the money, or part of the money derived from the sale of the lots of the cemetery, in charge of the respondent trustees, under the deed from the Little Schuylkill Navigation, Railroad and Coal Company, was appropriated to other purposes than to improve, manage and hold for the sole purpose of a general cemetery for the use of the people of the Borough of Tamaqua and vicinity.

Assuming for argument's sake, that the deed from the Schuylkill Navigation, Railroad and Coal Company to James M. Hadesty et al., trustees passed title in fee simple, yet the condition subsequently attached to said grant involves two main features:

First: That the land shall be improved, managed and held for the sole purpose of a general cemetery;

Second: This purpose is limited, "for the use of the people of the Borough of Tamaqua and vicinity, and no discrimination shall be made for or against any portion of the inhabitants, but the rules and regulations of said cemetery shall be so formed as to secure equal rights and privileges to all, etc."

The first feature of this condition has been carried out; there is no dispute, therefore the whole matter of contention is involved in the second feature as to whether the trustees have managed and held the property for the use of the people of the Borough of Tamaqua and vicinity, so as to secure equal rights and privileges to all.

The persons for whose use and benefit this right of sepulcher was granted, being the people of the Borough of Tamaqua and vicinity, the respondents claim that the complainants are not the proper parties to maintain the bill in any event, because they are only a part of the beneficiaries named in the grant, and that the grant to the people of Tamaqua means either,

A—The corporation of the Borough of Tamaqua, or

B—The people as a unit;

and that therefore the only authority to bring this action would be the borough council of Tamaqua, or the action by the majority of the people of Tamaqua, acting as a body.

Rule twenty-two of the Equity Rules of the Supreme Court provides: "That where parties on either side are very numerous, and cannot, without manifest inconvenience and oppressive delays in the suit, be brought before it, the court in its discretion, may dispense with making all of them parties, etc." This rule in addition to the fact that the complainants are the grantees or heirs of grantees of certain lots sold to them by the respondents, gives them such interest and rights in the premises, as to make them proper parties to maintain the bill.

This brings us to the main issue, which is as to whether

the respondents had a right to charge more money for the lots and the right of sepulcher, than was necessary for the improvement and maintenance of the cemetery, and to use any or all of the surplus money so received, for the benefit of Harmony Lodge in the erection of buildings and other purposes wholly disconnected from and forming no part of said cemetery.

While it is true that the deed sets forth that the consideration for the land was two hundred and twenty-six 88-100 ($226.88) dollars for their right, title and interest in said land, yet it also states: "Except as is.hereinafter provided," which proviso is as follows: "Reserving out of and from the same, all mineral, coal and iron, etc. ......It is further provided, that the true intent and meaning of this indenture is that the tract or piece of land above described is accepted on the express condition that the same shall be improved and managed and held for the sole purpose of a general cemetery for the use of the people of the Borough of Tamaqua and vicinity, and no discrimination shall be made for or against any portion of the inhabitants, but the rules and regulations of said cemetery shall be so formed as to secure equal rights and privileges to all of whatever sect, denomination, society, association or name. In case the managers of said cemetery shall attempt to violate or evade this express provision and condition the said lands herein mentioned and intended, shall immediately become vested in the said people themselves as fully and effectually as if they had been the original grantees herein named."

This reservation includes not only the usual mineral rights incident to lands in that locality, but also states specifically the purpose of the grant, and the use to which every particle of said land shall be put, limiting that purpose and use, to the people of the Borough of Tamaqua and vicinity.

While the persons for whose use and in whose interest this grant was made may be somewhat indefinite by reason of the geographical limits stated, yet the intent, ob-

ject and purpose of the grantor, as to what use shall be made of said lot, is very clearly and specifically stated, and positively limited, and does in no way, include Harmony Lodge as a beneficiary for the use, occupancy or enjoyment of any of the land, or any proceeds, increments or benefits arising out of or from said land, inconsistent with the provisions and purposes of the grant. They might as well disregard the coal and mineral reservation with the right to mine, etc., as to repudiate the exception or covenant running with the land, concerning its use, etc.

The evidence does not clearly establish the fact that any money received from the proceeds of this lot, has been appropriated to any other use than the improvement and maintenance of the cemetery, as the testimony shows that another tract of land was purchased, lots sold, etc., certain sums of money received from a fair held by said lodge and other sources, and no account rendered to show how much, if any, of the moneys received from the joint tracts and other incomes, was appropriated to the sole benefit of Harmony Lodge.

An account, therefore, should be rendered of all moneys received from and expended on the lot granted by the Little Schuylkill Navigation, Railroad and Coal Company, for the uses set forth in said grant, exclusive of any and all moneys received from any other source, so that proper disposition may be made of all moneys if any, that may have been improperly appropriated.

The plaintiffs contended: "That the defendants have abused their trust; that the deed above referred to only created a determinable fee, and that upon the happening of the event named in the said deed, namely, the actual failure on the part of the grantees named in the deed to carry out the purposes of the trust, or the evincing of an intention to evade the trust having arrived, that the fee would revert to the grantor, which was a corporation and is presumably still in existence, but for the express provision in the clause creating the trust, that upon the mis-

feasance or malfeasance of the trustee, the title to the same should immediately vest as fully in the people of Tamaqua and vicinity as though they had been the original grantees in the deed. Thus it evidences the intention of the grantor that all the people of the Borough of Tamaqua and vicinity were to share in the benefits of this ground, and that if the trustees selected by the grantor to carry out the purposes of this tract, should fail in the discharge of their duty, that title to the property should not vest absolutely in such errant trustees, but that the same interest reverting to the grantor should immediately vest in the people themselves. We take it that the only way in which the people can get the benefit of this alternative provision is by means of the appointment of other trustees by this court, who will, instead of diverting the property from its proper uses, hereafter devote it to the proper execution of the trust created by the said deed."

We do not think the testimony is sufficient to sustain the claim, "that the defendants have abused their trust," even assuming that the defendants appropriated some of the proceeds from the sale of these lots, believing that they had such title in fee simple, as made them the absolute owners, to appropriate the proceeds over and above the amount necessary to carry out the purpose of sepulcher as stated in the will. It was at most, an error that can be rectified, by rendering a full account of their transactions, and refunding all moneys, if any have been erroneously misappropriated.

We therefore find the following facts:

First: That the Little Schuylkill Navigation, Railroad and Coal Company, by a deed dated the 10th day of April, A. D., 1865, granted and conveyed in fee simple to James M. Hadesty, Henry Enterline, Benneville L. Fetherolf, Francis X. Bender and William A. Shoemaker, then trustees of Harmony Lodge No. 86, a certain piece of land containing fifteen (15) acres and one-eighth (1-8) more or less, situate in Schuylkill Township, with the usual

mineral and coal reservation incident to lands in that locality; and with the further proviso that the true intent and meaning of this indenture is, that the tract or piece of land above described is accepted on the express condition that the same shall be improved and managed and held for the sole purpose of a general cemetery for the use of the people of the Borough of Tamaqua and, vicinity, and no discrimination shall be made for or against any portion of the inhabitants, but the rules and regulations of said cemetery shall be so formed as to secure equal rights and privileges to all of whatever sect, denomination, society, association or name. In case the managers of said cemetery shall attempt to violate or evade this express provision and condition, the said lands herein mentioned and intended, shall immediately become vested in the said people themselves as fully and effectually as if they had been the original grantees herein named.

Second: The Odd Fellows' cemetery of Tamaqua, by deed dated the 10th day of February, 1913, granted and conveyed to John F. Boyer, one of the plaintiffs aforesaid, two lots of ground, Nos. 111 and 110, being part of the land conveyed to the trustees of said Harmony Lodge for cemetery purposes.

Third: That the trustees of Harmony Lodge have bought additional, adjoining ground for cemetery purposes, and from the sale of lots from both these said pieces of ground, and the proceeds of a fair and other sources of income, have improved and managed said tract of land for the purpose of a general cemetery, for the use of the people of the Borough of Tamaqua and vicinity.

Fourth: That they have appropriated part of the income from these various sources to the erection of a hall and other buildings, and have not made or filed separate or itemized accounts of their receipts and expenditures for the various purposes stated.

Fifth: That under the evidence, we are unable to ascertain how much if any of the money received for the

sale of lots purchased from the Little Schuylkill Navigation, Railroad and Coal Company was appropriated for any other purpose than the improvement and management of said tract of land, for the purpose of a general cemetery for the use of the people of the Borough of Tamaqua and vicinity.

### LAW.

First: We find that the complainants are proper parties to maintain this bill.

Second: That the doctrine of laches is not applicable under the facts shown in this case.

Third: That Charles Hodgkins et al. have not forfeited their right to hold the property under the terms of the deed from the Little Schuylkill Navigation, Railroad and Coal Company to James M. Hadesty et al., trustees of Harmony Lodge.

Fourth: That said trustees should give an account of all moneys, if any, received by them as trustees, not appropriated for the use and maintenance of a general cemetery; also all moneys so received, if any, which they have appropriated to the use of said lodge for its own purpose.

Fifth: That the receipts from the sale of lots of any of the ground deeded to them in the alleged will, as trustees, must be used for the care and management of the cemetery, and invested and kept as a fund for the purpose of perpetually preserving and keeping the lots in proper condition.

Exceptions were subsequently dismissed by the court in banc and the following decree entered:

Now, the 8th day of November, 1915, it is ordered, adjudged and decreed, that the defendants be restrained from appropriating any money received from the sale of lots, or any source, income or increment, from the fifteen and one-eighth (15 1-8) acres of land deeded by the Little Schuylkill Navigation, Railroad and Coal Company, to Edward Becker et al., as trustees of Harmony Lodge,

for any other use than the maintenance of said lot or any part thereof, for the purpose of sepulcher, and as a cemetery under the provisions of said deed.

That the defendants render a complete, itemized account of all moneys so received, or that may hereafter be received from said lots, as stated, over and above the amount necessary for the repair and maintenance of said piece of ground; and said moneys, with the accruing interest, shall be invested and appropriated from time to time, for the perpetual maintenance and proper care of said piece of ground, for the purpose of sepulcher, under the provisions set forth in said deed. Defendants appealed.

*Error assigned,* among others, was the decree of the court.

*George M. Roads,* with him *R. J. Graeff,* for appellant.

*Otto E. Farquhar,* with him *C. E. Berger,* for appellees.

PER CURIAM, March 19, 1917:

The five legal conclusions of the learned chancellor below logically followed his five findings of fact, and, upon these findings and conclusions the appeal is dismissed and the decree affirmed, at appellants' costs.