The GERMAN EVANGELICAL ST. MARC-
US CONGREGATION OF ST. LOU-
IS, a Corporation, Appellant,

v.

Esther ARCHAMBAULT et al., Respondents.

No. 51701.

Supreme Court of Missouri,
Division No. 1.

July 11, 1966.

————◆————

Melville A. Ochsner, St. Louis, for appellant.

Herman M. Katcher, Orville Richardson, W. Donald Dubail, Eugene H. Buder, Josephus Todd, St. Louis, for respondents.

HIGGINS, Commissioner.

Appeal from an award of $37,000 in attorneys' fees to certain respondents and against appellant.

A detailed statement may be found in a previous appeal, German Evangelical St. Marcus Congregation v. Archambault, Mo., 383 S.W.2d 704, but for the purposes of this appeal, a brief statement will suffice. Appellant, as owner of Old St. Marcus Cemetery in St. Louis, Missouri, and as trustee of a public charitable cemetery trust, sued respondents as representatives of the class of cemetery lot owners, and the Attorney General of Missouri as representative of the public interest, for a decree authorizing abandonment of the cemetery, removal of remains of persons buried there, and approval of sale of the fee simple title to the cemetery land free of all limitations imposed upon the use of the land for ceme-

tery purposes. The trial court granted the relief requested but the judgment was reversed by the Supreme Court. Thereafter, certain respondents other than the Attorney General petitioned for attorneys' fees for services rendered by their attorneys in the defense of the action and successful prosecution of the appeal. The award was entered in favor of petitioning respondents and against appellant "as trustee of the Old St. Marcus Cemetery."

■ Respondents have moved to dismiss this appeal alleging that appellant's jurisdictional statement fails to set forth facts demonstrating jurisdiction to be in the Supreme Court, and that appellant's points relied on are mere abstract statements of law, all in violation of Civil Rule 83.05(b) (e), V.A.M.R. Appellant has moved for permission to amend the jurisdictional statement and points relied on in a manner that would leave no doubt as to compliance with the rule. Amendment of the brief in the respects noted is authorized, and the motion to dismiss is overruled. Loumar Development Co. v. Redel, Mo., 369 S.W.2d 252, 255[2].

■ Appellant says that an award of attorneys' fees to certain respondents was improper because the Attorney General is the legal representative of public trusts and he cannot be allowed fees for such services. The Attorney General does, of course, represent the public and the public interest in respect to matters involving enforcement of public charitable trusts, Murphey v. Dalton, Mo., 314 S.W.2d 726, 730[1], 67 A.L.R.2d 1278, and he is not entitled to attorney's fees for such services. Thatcher v. City of St. Louis, 343 Mo. 597, 122 S.W.2d 915, 918[4]; Ex parte Blackmon, 238 Ala. 369, 191 So. 356, 359[4]. He does not, however, represent each and every member of the public, particularly where private interests exist, in which case "those with a special interest may enforce the trust, or a localized or grouped charity may be enforced by a class suit." Dickey v. Volker, 321 Mo. 235, 11 S.W.2d 278, 281[3], 62 A.L.R. 858; Mur-

phey v. Dalton, supra; Seitzinger v. Becker, 257 Pa. 264, 101 A. 650, 651[1]; Scott on Trusts 2d, § 391, p. 2758; Rest., Trusts 2d, § 391, p. 279.

■ Appellant, itself, did not consider the Attorney General to be the only necessary party in this action, but instead brought respondents into the suit alleging them to have similar interests with, and to be adequately and fairly representative of, all owners of rights of interment and perpetual care, and they proved their value and special interest by taking measures, including employment of counsel, necessary to preserve the trust against the effort of the trustee (appellant) to destroy it. Generally, beneficiaries in a charitable trust have a right to maintain suit to enforce the trust or prevent diversion of its funds, 10 Am.Jur., Charities, § 117, p. 670, and even though in Missouri the purchaser of a cemetery lot does not acquire an estate in fee but merely an easement or privilege of burial, Billings v. Paine, Mo., 319 S.W.2d 653, 656[4–6], Wooldridge v. Smith, 243 Mo. 190, 147 S. W. 1019, 1022[3], 40 L.R.A., N.S., 752, German Evangelical St. Marcus Congregation v. Archambault, supra, 383 S.W.2d l. c. 710 [2, 3], lot owners (or their representatives) have such special interest as to justify respondents' defense of the trust in the original suit. As said in Tracy v. Bittle, 213 Mo. 302, 112 S.W. 45, 49[4]: "The plaintiff, having near relatives buried in this graveyard, has a peculiar right in the maintenance of this public use and in preventing an obstruction to the public use. In such case he can maintain the action, * * *." The rule is well stated in Bogert, Trusts and Trustees, § 414, pp. 345, 346: "A case of somewhat similar type is that of a cemetery trust when regarded as charitable. There the lot owners, persons who are entitled to have their dead buried there, or who already have friends or relatives interred in the cemetery, all may be said to have a definite interest in the trust. Other members of the public may also receive benefit, through the opportunity to buy lots, or otherwise; but the lot holders and others simi-

larly situated are clearly already benefited and interested in the upkeep of the cemetery. Such interest may be regarded as sufficient to enable them to sue to compel execution of the cemetery trust." These authorities show a clear entitlement in respondents to protect their special interests and to enforce the public cemetery trust by defending against appellant's effort to invade and destroy it. See also 14 C.J.S. Cemeteries § 25, p. 85; Jackson, The Law of Cadavers, p. 362; Steele v. Rosehill Cemetery Co., 370 Ill. 405, 19 N.E.2d 189; Brown v. Hill, 284 Ill. 286, 119 N.E. 977, 980[1–5]; Hertle v. Riddell, 127 Ky. 623, 106 S.W. 282, 15 L.R. A., N.S., 796; Mills v. Carolina Cemetery Park Corp., 242 N.C. 20, 86 S.E.2d 893, 899[8]; Smith v. Ladage, 397 Ill. 336, 74 N. E.2d 497, 500[7]; Seitzinger v. Becker, supra; Houston Cemetery Co. v. Drew, 13 Tex.Civ.App. 536, 36 S.W. 802, 805. Such rights have been particularly expressed as the right to protection of the grave after burial, Brown v. Maplewood Cemetery Assn., 85 Minn. 498, 89 N.W. 872; as including the instinctive right that the unity and integrity of the cemetery be preserved as a whole, Jackson, supra, p. 374; to have unsold portions of the cemetery maintained, German Evangelical St. Marcus Congregation v. Archambault, supra; to have funds be not devoted to other than cemetery purposes, 14 C.J.S. Cemeteries § 12, pp. 72, 73, Seitzinger v. Becker, supra, 101 A. l. c. 651 [2], Clark v. Rahway Cemetery, 69 N.J.Eq. 636, 61 A. 261; to have trustees with an exclusive interest in advancing the beneficiaries' interest, Powers v. Johnson, Mo. App., 306 S.W.2d 616, Cave Hill Cemetery Co. v. Gosnell, 156 Ky. 599, 161 S.W. 980, 983, Rest., Trusts 2d, § 170. The views of the Attorney General might conceivably conflict with those of respondents in respect to such matters of special interest, and respondents, in representing such interests, should be permitted counsel of their own choice. Murphey v. Dalton, supra, 314 S. W.2d l. c. 731[6].

Appellant contends also that the award of attorneys' fees to respondents was im-

proper because the "owners of rights of burial in non-perpetual care graves cannot demand * * * care and upkeep. And nothing was brought into Court out of which fees could be allowed. * * * There is no fund or res or subject matter in which owners of rights or interment have an interest out of which an allowance * * * can be made, and there is no res, fund or subject matter in which respondents can share." Appellant develops these points by argument to the effect that owners of non-perpetual care rights do not have any interest in any perpetual care funds held by appellant and perpetual care rights do not have any interest in such funds for payment of fees because such funds were not preserved or litigated by respondents, and that payment from other than a fund would penalize the fee. Appellant concedes the propriety of an award of fees where money is paid into court out of which the allowance is made, quoting Leggett v. Missouri State Life Ins. Co., Mo., 342 S.W.2d 833, 936 [60, 61]: "It is the general rule, 'well rooted in equitable principles,' * * * that where one goes into a court of equity and takes the risk of litigation on himself, and successfully 'creates, protects, or preserves' a fund, 49 A.L.R. at p. 1153, or brings about the 'creation, increase or protection' of a fund, * * * in which others are entitled to share, those others will not be allowed to lie back and share the results of the successful labors without contributing their proportionate part of counsel fees. * * * The equitable way to apportion the expenses of counsel fees is to allow them against the fund. * * * However, counsel fees may properly be allowed, other circumstances permitting, when the interests of the party seeking the allowance are antagonistic to the one brought to account and compelled to pay a fund into court for distribution * * *."

■ Even though the preceding case, like many others, involved payment of attorneys' fees from funds required to be paid into court, such allowances do not depend alone upon recovery of a fund or upon the existence of a res or subject matter which can be distributed or disbursed to the members of the class benefited. "It is a general principle that a trust estate must bear the expenses of its administration. It is also established by sufficient authority, that where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts." Trustees v. Greenough, 105 U.S. 527, 532–533, 26 L.Ed. 1157. And the court's discretion on such allowances is based on considerations other than recovery or salvation of a fund in Bogert on Trusts 2d, § 871, p. 102: "In suits to enforce the rights of trust beneficiaries the court exercises discretion as to the allowance of counsel fees and costs out of the trust property or from other sources. The primary consideration is the result of the litigation. Was the claimant successful in securing the relief he demanded? Did his conduct and that of his attorney protect or enhance the trust fund? Whose fault was it that the law suit was necessary? These and similar questions determine whether the court will grant the request for counsel fees * * *. The applicant and his counsel must prove that they have performed a service to the trust in protecting and preserving the trust assets or in resisting an unjustified claim arising out of the trust administration." Still another way of stating the general proposition is 90 C.J.S. Trusts § 284(3), pp. 407–410: "The fees of counsel employed by a cestui que trust to protect and preserve the trust estate may be allowed as a charge against the estate, where the trustee has failed to act, provided the counsel's services were reasonably necessary and beneficial to the trust, and were for the common benefit, * * *. Costs and expenses of litigation may also be allowed to one or more beneficiaries who successfully maintain an action to recover or preserve the trust property for the benefit of all the beneficiaries under circum-

stances which would have entitled the trustee to reimbursement had he brought the action."

Similar circumstances existed in City of St. Louis v. McAllister, 302 Mo. 152, 257 S.W. 425. The trustees of a public charitable trust sued the Attorney General alleging that due to changed conditions the object of the trust had failed and expenses absorbed an undue amount of income. Certain collateral heirs were permitted to intervene on the ground that they were necessary to resolution of all issues and it was held that the trial court abused its discretion in refusing counsel fees to the intervening parties. The court there relied on yet another statement of the rule in respect to such case, quoting 2 Perry on Trusts, 6th Edition: " ' * * ° * where a suit arises between the trustees and the cestuis que trust, if there are any that can come into court, or the Attorney General and the trustees as to the establishing and administering of the charity, costs will be allowed to all parties, together with reasonable counsel fees or costs as between solicitor and client, out of the charity fund or estate.' " 257 S.W. 1. c. 426[1–3]. And in Lang v. Taussig, Mo.App., 194 S.W.2d 743, the First Unitarian Church was among beneficiaries sued and it pursued matters in the litigation resulting in modification of the trial court's judgment. Requested relief and counsel fees were denied and the reviewing court, in remanding the case for modification of the judgment and allowance of attorneys' fees, said, 1. c. 748[8]: "This is not a case where the claimant sought to obtain something as an heir, or to destroy the trust estate. The suit was brought by the trustees to obtain a construction of the will, the instrument creating the trust. That was the purpose of the litigation. The endeavors of the appellant were directed to that end, and unquestionably aided the court in arriving at a proper construction of the instrument. The claim of the appellant was under the instrument creating the trust as properly construed, not against it. Its endeavors were not solely for its own bene-

fit. The fact that its endeavors served its own interests as well as the interests of the estate does not defeat its right to * * a reasonable attorney's fee." See also Ewing v. First Nat. Bank of Atlanta, 209 Ga. 932, 76 S.E.2d 791; Reed v. Eagleton, Mo., 384 S.W.2d 578, 589, 590[4]; Merchants' & Manufacturers' Securities Co. v. Johnson, 8 Cir., 69 F.2d 940, 945[7, 8].

In this case appellant is the trustee of a public charitable trust and respondents are part of the beneficiaries and named as representative of all beneficiaries of the trust. Appellant's action was to destroy the trust and respondents' defense caused the trust to be preserved and enforced, action which benefited all beneficiaries. Appellant alone instituted the lawsuit which respondents were forced to defend or default, giving rise to the necessity of employing attorneys, and their efforts were a service to the trust in that they successfully resisted an unjustified attempt to destroy the trust. Respondents merely did that which they were required to do by appellant when it named respondents as class defendants. Their efforts and presence made it possible for the court to determine whether the trust should be terminated or continued, a matter of proper administration of the trust and one of special interest to respondents and the class they represented. City of St. Louis v. McAllister, supra, 257 S.W. 1. c. 427 [7]; Jesser v. Mayfair Hotel, Inc., Mo., 360 S.W.2d 652, 660 [5], 661 [6]; Barron and Holtzoff, Federal Practice and Procedure, Vol. 2, § 570.1, p. 338, Vol. 3, § 1197, pp. 65–67; Hornstein: The Salvage Factor in Counsel Fee Awards, 69 Harvard Law Review 658.

Specifically, as to allowances depending upon recovery of a fund or existence of a res or subject matter out of which to pay the award, Barron and Holtzoff, supra, § 1197, p. 67, says: "But the fact that a party does not formally sue for a class and does not formally establish by litigation a fund available to the class is not the determinative factor. The allowance of extraordi-

nary costs, 'as between solicitor and client' rests upon recognized equitable principles and may be made whenever the burden of litigation assumed by the prevailing party substantially benefits others who should in equity contribute to the expense." This was the situation in Jesser v. Mayfair Hotel, Inc., supra, where plaintiff's action in securing an injunction against the disposition of assets saved the trustee and other beneficiaries from an unlawful sale of assets. The court recognized that "[a] trust beneficiary who prevents a wrongful disposition of trust assets renders a benefit to the trust estate as much as the one who recovers back property wrongfully disposed of," 360 S.W.2d l. c. 661 [7], citing, among others, Leggett v. Missouri State Life Ins. Co., supra, which answers the argument of no funds out of which to pay, saying, " * * * ability to pay is not material on the issue of a legal duty to pay in an action on a contract, or in an accounting * * *," 342 S.W.2d l. c. 937, and Abrams v. Textile Realty Corp., Sup., 97 N.Y.S.2d 492, where plaintiff prevailed in a suit to enjoin an ultra vires act by the defendant corporation. It was contended (as here) that the suit created no fund or property out of which to pay fees, and in rejecting the argument the court said: "Hence, on the narrow issue of law as to 'the right' to an allowance, as distinct from issues of law and fact as to the amount of allowance, there is no relevance in an argument that this suit created no fund or property for Textile or its security holders, or that they or any of them would have been better off if the ultra vires act had been performed. The law cannot refuse to recognize as beneficial full observance of the law." 97 N.Y.S.2d l. c. 496 [1]. Also cited with approval in Jesser v. Mayfair Hotel, Inc., supra, was Holthusen v. Edward G. Budd Mfg. Co., D.C.Pa., 55 F.Supp. 945, 946 [2, 3]: " * * * defendant argues that no allowances may be made because the suit was neither a representative action nor a derivative action * * * because there has been no 'fund' recovered against which such allowances may be charged. It is somewhat difficult to see, however, why these considerations should preclude the allowance of reasonable counsel fees and expenses. * * * To rule that a shareholder who recovers back * * * property wrongfully disposed of is entitled to recover his expenses and counsel fees, but that one who prevents such wrongful disposition originally is not so entitled, would establish a distinction tending to discourage a prompt, expeditious and comparatively simple method of restraining corporate abuses in favor of actions, often difficult and costly, to remedy such abuses. With respect to the necessity of a 'fund', there appears to be equally little reason to distinguish between property wrongfully disposed of * * * and recovered * * *, and property which would have been wrongfully disposed of * * * but for a shareholder's suit." See also Allen v. Chase National Bank, Sup., 40 N.Y.S.2d 245, 251 [1]; Martin Foundation v. Phillips-Jones Corp., 204 Misc. 120, 123 N.Y.S.2d 222; Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 166, 59 S.Ct. 777, 83 L.Ed. 1184; Rolax v. Atlantic Coast Line R. Co., 4 Cir., 186 F.2d 473, 481 [7, 8].

Appellant cites in addition to Leggett v. Missouri State Life Ins. Co., Young v. Pressgrove, 355 Mo. 204, 195 S.W.2d 516, Wallace v. Fiske, 8 Cir., 80 F.2d 897, 107 A.L.R. 726, St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 186 S.W.2d 578, Tracy v. Martin, 363 Mo. 108, 249 S.W.2d 321, and St. Louis Union Trust Co. v. Fitch, 354 Mo. 638, 190 S.W.2d 215, in which allowances were made against or out of certain funds, but they do not hold that allowances for counsel fees cannot be made where no specific fund is brought into court; nor do they support appellant in its charge that an allowance of attorneys' fees in this case would penalize the fee.

Under the authorities discussed it is clear that appellant's argument that fees

cannot be allowed in this case absent a recovered "fund" is without merit, and the circumstances satisfy the requirements necessary to an exercise of discretion by the court resulting in such an allowance. Appellant's action as trustee would have destroyed the trust absent the successful defense made by respondents, which action preserved the trust, its property and funds, and the beneficiaries' interest in them. Respondents had special interests which they protected because they and those whom they represented had burial rights and interments which would have been disturbed absent their forceful action. The benefits of the defense they were forced by appellant to make resulted to all of the class represented by respondents. Accordingly, it cannot be said that the court acted improperly in making an award of counsel fees for such successful defense of appellant's lawsuit and attempted violation of its trust.

 Finally, appellant says the fees allowed are excessive. Canon No. 12, Canons, Professional Ethics of the American Bar Association, and Civil Rule 4.12, V.A.M.R., say: "In * * * determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment * * * will involve the loss of other employment while employed in the particular case * * *; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation and (6) the character of the employment, whether casual or for an established and constant client." These or similar criteria were accepted as the elements to be considered in fixing attorneys' fees in Scheufler v. Continental Life Ins. Co., 350 Mo. 886, 169 S.W.2d 359, 363 [1–3]. See also Hornstein, The Counsel Fee in Stockholder's Derivative Suits, 39 Col.

Law Review 784, 811; Barron and Holtzoff, supra, § 570.1.

In this case the efforts of respondents' attorneys brought to light that appellant had a contract to sell the cemetery for $760,000 for commercial development "conditional upon a favorable decree permitting abandonment of the cemetery." They also developed that perpetual care funds for Old St. Marcus Cemetery and New St. Marcus Cemetery were intermingled and amounted to $627,000. There were also general and contingency reserve accounts, most of which were credited to the new cemetery. These money values are, of course, in addition to the immeasurable values of the sentiment surrounding the burial places of respondents' dead which could never have been completely restored if appellant's action had succeeded. The resolutions of appellant to abandon the cemetery were found to have been adopted in 1955 and 1956, several years before the action was filed. The efforts of respondents had to meet previous planning of appellant to abandon its trust, and they had to engage in considerable discovery in order to acquire information from records held by appellant. Such efforts produced evidence from which this court determined that the cemetery was not run down and abandoned in fact as alleged by appellant, but rather one which showed care to be given to many burial sites, held by a wealthy trustee, and in which nearly 20,-000 persons had been buried. They also adduced evidence to show that some 2,290 perpetual care contracts had been sold by appellant since 1929 and that interments continued until 1962 when St. Louis enacted an ordinance prohibiting further burials there. This was the type of action which, by its nature, produced unusual problems and questions to which answers are not generally available from knowledge and experience. The previous appeal and this appeal indicate considerable research in the law of cemeteries, class actions, pleading, equity, and constitutional law. Respondents met the requirement of produc-

ing a successful result which in itself is some measure of the skill and competence of their lawyers. Respondents' preparation took over two and one-half years and it is not surprising that their lawyers would testify to over 1,700 hours spent on the case, which is not to mention additional time spent on this appeal protecting the award of fees made to them.

There was evidence from which the court could find that Herman M. Katcher, attorney for respondents Hillig, Flynn, Wagner, Doerflinger, Donnelly, and Zeigenhein, spent 1,200 hours in connection with this case for which an award of $24,-000 was made; that Morton K. Lange, attorney for the same respondents, spent 330 hours for which $8,500 was allowed; that Donald Dubail, attorney for respondent Farbelow, spent 70 hours valued at $2,000; that Oscar E. Buder (now deceased), attorney for respondent Shelton, spent 40 hours and four days in court valued at $1,500; that Josephus Todd, attorney for respondent Schlagenhauf, spent 40 hours valued at $1,000, a total of $37,000. The average hourly rate amounts to less than $22 per hour. The rate of the award for the services of the principal lawyer, Mr. Katcher, is less than $20 per hour; the rate of the award for the services of Mr. Dubail is $28 per hour, and the awards for the services of Mr. Buder, Mr. Todd, and Mr. Lange are at the rate of $25 per hour. These charges are all within the evidence before the court on reasonable hourly charges where compensation is certain, and in this case the entitlement to fees was additionally burdened by being contingent upon success, another factor which the court could properly consider. Trautz v. Lemp, 334 Mo. 1085, 72 S.W.2d 104, 106 [11]; Smith v. Couch, 117 Mo.App. 267, 92 S.W. 1143, 1145; Brand v. Denson, Tex.Civ.App., 81 S.W.2d 111, 112 [3].

Appellant seems to say that some of the time the attorneys spent on this case was not properly a part of the defense of its action. It is not demonstrated by appellant what, if any, time was not devoted to some expected aspect of the case, and the reasonableness of the extent of services claimed must necessarily be examined in the circumstances of the case as they developed and existed rather than in retrospect. Jesser v. Mayfair, supra, 360 S.W. 2d l. c. 664 [14].

It is said as well as it can be in Trustees v. Greenough, supra, 105 U.S. 1. c. 537, 26 L.Ed. 1157: "* * * the Circuit Court had the power, in its discretion, to allow * * * reasonable * * * counsel fees * * * in * * * causing it (the fund) to be subjected to the purposes of the trust. The allowances made for these purposes we have examined, and do not find anything therein seriously objectionable. The court below should have considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court can have. It is not shown in this case by the appellants that any of these allowances are excessive, or that the expenditures allowed were not fairly and honestly made." See also Mercantile Trust Co. v. Muckerman, Mo., 377 S.W. 2d 355, 361 [5]; Reed v. Eagleton, supra, 384 S.W.2d l. c. 590 [5].

Accordingly, the judgment is affirmed.

HOUSER, C., concurs.

WELBORN, C., not sitting.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.