Harold M. BURNSIDE, Appellant,

v.

GILLIAM CEMETERY ASSOCIATION
OF GILLIAM, Missouri, et al.,
Respondents.

No. WD 60847.

Missouri Court of Appeals,
Western District.

Feb. 4, 2003.

Weldon W. Perry, Jr., Lexington, MO, for Appellant.

Donald G. Stouffer, Marshall, MO, for Respondents.

Before BRECKENRIDGE, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

Harold M. Burnside appeals from the trial court's dismissal of his petition, which sought an equitable accounting and injunctive relief against Gilliam Cemetery Association, on the basis that he lacked the legal capacity to bring suit. Burnside's sole point on appeal is that the trial court erred in dismissing his petition because (1) the action was not a "quo warranto" proceeding governed by § 352.240, but rather

the petition properly pled an action for "equitable accounting"; (2) he otherwise had "standing" to maintain the action pleaded under Chapter 610; and (3) even if deemed "quo warranto" in nature, the petition pled facts and circumstances demonstrating a "special interest" sufficient to afford legal capacity to maintain such an action.

We reverse and remand.

### Facts

On March 30, 2001, Harold Burnside ("Burnside") filed a petition against Gilliam Cemetery Association of Gilliam, Missouri ("Gilliam"). In Count I, Burnside sought an equitable accounting, and in Count II, Burnside sought injunctive relief. The petition alleged Burnside was a resident of the City of Gilliam, Missouri, owned grave plots in the cemetery and has a deceased father interred there. Gilliam's Articles of Agreement of Association provide that anyone can become a member of the association by paying the sum of $1. Membership is not limited to a specific class of persons. Gilliam filed a motion to dismiss Burnside's petition, alleging Burnside had no legal capacity to commence the action and the petition failed to state a cause of action on which relief could be granted pursuant to § 352.240, § 509.290, and Rule 55.27. The trial court dismissed the case on the basis that Burnside lacked the legal capacity to bring the suit under § 352.240. Burnside filed a motion for reconsideration or rehearing, which was denied. This appeal follows.

### Standard of Review

In *In re Swearingen*, 42 S.W.3d 741, 745–46 (Mo.App. W.D.2001), we stated the applicable standard of review to be as follows:

When reviewing a trial court's grant of a motion to dismiss "we engage in an essentially de novo review of an issue of law." We assume as true all of the plaintiff's averments and all reasonable inferences therefrom "treating all facts alleged as true and construing the allegations favorably to the plaintiff." ... [W]e review the petition to determine whether it invokes principles of substantive law and whether the facts alleged, if proven, would entitle the plaintiff to relief.

(Citations omitted.)

### Argument

Burnside's sole point on appeal is the trial court erred in dismissing his petition because (1) the action was not a "quo warranto" proceeding governed by § 352.240,[1] but rather the petition properly pled an action for "equitable accounting"; (2) he otherwise had "standing" to maintain the action pleaded under Chapter 610; and (3) even if deemed "quo warranto" in nature, the petition pled facts and circumstances demonstrating a "special interest" sufficient to afford legal capacity to maintain such an action.

In *Gardner v. Blahnik*, 832 S.W.2d 919, 923 (Mo.App. W.D.1992), we stated as follows:

The issue of whether a plaintiff has standing to sue is not related to one's legal capacity to sue, which is waived unless timely asserted. The capacity of a party to sue means the party has the right to avail himself access to the courts because he is without any general disability (e.g., infancy or insanity). Standing to sue, on the other hand, exists when a party has an interest in the subject matter of the suit which gives that person a right to recovery, if vali-

---

1. All section references are to RSMo 2000.

dated. This court has the unquestioned authority to entertain a standing issue, for this issue cannot be waived.

(Citations omitted.)

## Section 352.240

Section 352.240 provides, in relevant part, as follows:

1. The circuit court of the city or county in which any corporation organized under this chapter shall be located shall, upon proceedings by information in the nature of a quo warranto, instituted against such corporation or the officers thereof, by the attorney general or circuit attorney, at the relation of any person desiring to prosecute the same, inquire into any alleged unlawful acts of or misuser or nonuser of its franchise by such corporation, in like manner as is or may be provided by law for proceedings in case of the alleged usurpation of or intrusion into any public office by any person.

. . .

4. And it shall be the duty of the attorney general, or circuit or prosecuting attorney of the proper circuit or county, whenever any credible person shall, in writing, make complaint to him upon affidavit of information and belief, that any corporation formed under this chapter has, in any material matter, willfully misused, or, for two years last past, has neglected to use its franchises, or has otherwise become liable to forfeit its charter, to inquire diligently into the grounds of such complaint, and upon reasonable cause shown therefor, to institute proceedings by information in the nature of a quo warranto, looking to a

dissolution of such corporation and a forfeiture of its corporate rights.

\* \* \* \* \* \*

Burnside argues that his petition pled an action for "equitable accounting" in Count I and injunctive relief in Count II. He argues that his petition did not seek "quo warranto" relief, i.e., ouster, dissolution or liquidation, nor did it seek any other relief that is the subject of § 352.240.

■ Section 352.240 outlines the proper parties and procedures for suing a charitable association incorporated under Chapter 352. The statute provides that it is the duty of the attorney general or county prosecutor to investigate and prosecute against a public charitable corporation when there have been allegations of wrongdoing. Upon finding reasonable cause for instituting a suit against a public charitable corporation, the attorney general or county prosecutor shall proceed by information in the nature of quo warranto.

■ These officials become officially charged with this duty only upon proper complaint by a "credible person."[2] *Tyree v. Bingham,* 100 Mo. 451, 13 S.W. 952, 954 (1890). Apparently, no such complaint was made in this case. The power of the state was not invoked. Instead, Burnside pursues his action against Gilliam as a private citizen.

■ Generally, "[W]here [a statute] directs the performance of certain things by specified means . . . or by a particular person . . . it implies that it shall not be done otherwise or by a different person. . . ." *Parvey v. Humane Soc'y,* 343 S.W.2d 678, 681 (Mo.App.1961) (holding the only parties entitled to bring an action

---

**2.** There is also authority allowing the Attorney General to institute a quo warranto without intervention of a third party as relator. *Modern Horseshoe Club v. State ex rel. Jones,* 167 Mo.App. 644, 150 S.W. 719, 720 (1912); *State ex rel. Brown v. McMillan,* 108 Mo. 153, 18 S.W. 784, 785 (1891).

under a Missouri statute regulating the practice of veterinary medicine were those enumerated within the statute) (quoting C.J.S. *Statutes* § 333 (1955)). Under § 352.240, the attorney general or county prosecutor is empowered with means to ensure a charitable corporation does not violate its internal regulations or the provisions of Chapter 352. The question to be answered in this case is whether this responsibility and duty is preclusive or whether a private citizen may institute proceedings outside Chapter 352 as Burnside attempts.

### Special Interest

In Missouri, "[s]uits alleging mismanagement or misuse of public charitable funds [by a charitable corporation] must generally be brought by the Attorney General." *State ex rel. Cent. Inst. for the Deaf v. Burger*, 949 S.W.2d 126, 127 (Mo.App. E.D.1997) (citing § 352.240). An exception to this general rule exists where the litigant has a special interest in the charity. *See, e.g., Dickey v. Volker*, 321 Mo. 235, 11 S.W.2d 278 (banc 1928). Unless Burnside has pled facts to demonstrate he has a "special interest" in Gilliam, he has no standing to pursue this action.

Burnside alleges he has a special interest in Gilliam because (1) he owns grave plots in the Gilliam Cemetery; (2) his father is buried in the Gilliam Cemetery; and (3) Gilliam's counsel serves as the prosecuting attorney of Saline County. As Gilliam's counsel is one of only two officers authorized to maintain actions under § 352.240, this compromises Burnside's ability to "effectively refer the matter for such action," and "bears upon the issue of a 'special interest' in the matter."[3]

In *Dickey*, an individual newspaper owner and publisher left a will leaving proper-

ty to his wife and daughter in trust, subject to life estates in them. Upon their death, in accordance with the terms of the will, the trust estate passed to trustees selected by several university presidents to be used for the arts, "which might contribute to the delectation and enjoyment of the public generally. . . ." *Dickey*, 11 S.W.2d at 280. The university trustees subsequently sold the newspaper properties. *Id.* at 281. Walter S. Dickey was an unsuccessful bidder for the newspaper properties. *Id.* Dickey requested that the Attorney General file suit against the trustees, and the Attorney General refused. *Id.* Dickey then filed suit against the trustees, making the Attorney General a party defendant, seeking to have the sale set aside on the grounds of fraud and further requesting that the court order the trustees to accept one of the previous bids or conduct a new sale of the properties. *Id.* Dickey sued not to enforce his right as the best bidder, but rather solely as a beneficiary of the trust. *Id.* The defendants argued, among other things, that Dickey was without legal capacity to sue. *Id.* The trial court entered judgment for defendants. *Id.*

On appeal, Dickey argued that the right of the Attorney General to institute the suit was not preclusive and that he had a right to bring the suit. *Id.* The respondents argued that Dickey was not a real party in interest and that the power to institute the suit was lodged solely with the Attorney General. *Id.* In regard to public charitable trusts, the court stated as follows:

> An individual member of the public has no vested interest in the property or funds of the trust. In common with other members, he has an interest in the charitable use. He has no right of ac-

---

**3.** Of course, the Attorney General is authorized to perform the statutory duties or, if a

conflict actually exists, a special prosecutor could be appointed.

tion for the mismanagement or misuse of the fund. Any action on this account must be taken by the Attorney General as the representative of the public. However, those with a special interest may enforce the trust, or a localized or grouped charity may be enforced by a class suit.

*Id.* The court held that there was no class because the testator did not create a local or group charity. *Id.* at 285. The court further held that Dickey did not allege a special interest in the charity and that his interest was hostile and he could not stand as a representative of other beneficiaries. *Id.* The court stated "[t]he use being for the entire public, [Dickey's] interest is so trifling he should not be permitted to maintain the suit." *Id.* The court found "[Dickey] has the same interest in the fund as the other members of the public," and that Dickey had no *property right* in the fund. *Id.* at 286–87.

As previously noted, anyone, upon payment of $1, can become a member of Gilliam. An individual membership status merely places him on equal footing with an unlimited number of other members, none possessing any unique or special interest. To allow such a member or a member of the public to sue Gilliam or a similar benevolent or charitable entity would subject the organization to numerous, potentially harassing, suits. But, Burnside alleges something further: that he is a plot owner and his father is buried there. Does this allege a "special interest" sufficient to grant him standing to proceed with this action?

The Missouri Supreme Court in *German Evangelical St. Marcus Congregation of St. Louis v. Archambault* recognized that a plaintiff having "near relatives buried in [a] graveyard, has a peculiar right in the maintenance of [the] public use [of the graveyard] and in preventing an obstruc-

tion to the public use." *Archambault,* 404 S.W.2d 705, 707 (Mo.1966) (quoting *Tracy v. Bittle,* 213 Mo. 302, 112 S.W. 45, 49 (Mo.1908)). *Archambault* involved a suit brought by the trustee of a charitable cemetery trust to abandon the cemetery. The trustee named several burial plot owners as defendants. The court distinguished the interest in a charitable cemetery trust of a burial lot owner from that of other members of the public as follows:

> [T]he lot owners, persons who are entitled to have their dead buried there, or who already have friends or relatives interred in the cemetery, all may be said to have a definite interest in the trust. Other members of the public may also receive benefit, through the opportunity to buy lots, or otherwise; but the lot owners and others similarly situated are clearly already benefited and interested in the upkeep of the cemetery. Such interest may be regarded as sufficient to enable them to sue to compel execution of the cemetery trust.

404 S.W.2d at 707 (quoting GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 414 (Rev.2d ed.1991)). The *Archambault* court held the quoted authorities clearly entitled the plot owners to protect their *special interests* and to enforce the public cemetery trust. 404 S.W.2d at 707.

As stated in its constitution, the purpose of Gilliam is "to maintain, care for and beautify" the cemetery. Appellant in the present case has pled he owns a burial plot in Gilliam and his father is buried there, which sufficiently alleges a special interest in Gilliam, which, if proven, grants him standing to pursue this action. Our focus in this case is on the narrow issue of standing and we need not and do not further address the pleadings in or merits of this action.

Chapter 610

Burnside also argues that the Missouri Sunshine Law allows him to bring suit against Gilliam. Specifically, he argues that Gilliam is a quasi-public governmental body as defined in § 610.010(4)(f), and he has standing to enforce the requirements of the Sunshine Law as an aggrieved taxpayer. As we have resolved that Burnside has alleged special interest in Gilliam that if proven accords him standing to bring this suit, we need not address his Sunshine Law argument.

For the reasons set forth above, Burnside has alleged facts, which, if proven true, give him standing to pursue this claim. Therefore, we reverse the trial court's dismissal of his petition for lack of capacity to sue and remand with instructions to the trial court to reinstate Burnside's petition for further proceedings in accordance with this opinion.

BRECKENRIDGE, P.J., and HOLLIGER, J., concur.