ARTHUR ROGERS IVEY

*v.*

STATE OF TENNESSEE.

360 S.W.2d 1.

(*Nashville,* December Term, 1961.)

Opinion filed September 7, 1962.

HENRY, McCORD & FORRESTER, Tullahoma, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, Nashville, for the State.

See also 207 Tenn. 438, 340 S.W.2d 907.

MR. JUSTICE DYER delivered the opinion of the Court.

Plaintiff in error, Arthur Rogers Ivey, will be referred to in this opinion as Defendant, and Defendant in Error, the State of Tennessee, as the State. Defendant was convicted of murder in the first degree receiving a sentence of 99 years in the penitentiary from which he has seasonably appealed to this Court assigning errors.

The State has entered a motion to dismiss the appeal on the ground same is unauthorized in that a motion for a new trial was not made within thirty days after the verdict of the jury. The State relies upon Section 27-201, T.C.A., which requires a motion for a new trial be made within thirty days from the decree, verdict or judgment sought to be affected.

The jury returned their verdict in this case on January 18, 1961. This minute entry dated January 18, 1961 recites the verdict of the jury and then recites defendant is to have 60 days in which to prepare and file a motion for a new trial, which motion will be heard and determined by the Court on April 4, 1961. The Trial Judge signed this minute entry and apparently in the handwriting of the judge is the following notation:

"This order should have been made of record on each date herein indicated but by oversight it was not done. It is entered now for then. April 6, 1961."

The next minute entry is dated March 18, 1961. This entry recites defendant moved for a new trial on January 18, 1961; was granted additional time of 60 days and now for good cause shown is granted additional time until March 27, 1961 in which to prepare and file his motion for a new trial.

The next minute entry recites the motion for a new trial filed March 27, 1961. The District Attorney General then entered a motion to strike the motion for a new trial setting out this motion for a new trial was not applied for or filed within 30 days after the verdict.

The trial judge on April 4, 1961 overruled the motion to strike made by the State, and also the motion for a new trial.

■ Since the Court speaks only through its minutes the judgment was not entered as a minute entry of record until April 6, 1961. Counsel was not required to move for a new trial until judgment was entered of record against him. *Jackson v. Jarratt,* 165 Tenn. 76, 52 S.W.2d 137. This motion is overruled.

This case must be reversed on one ground which is assigned as error and was incorporated in the motion for a new trial. It will therefore be improper for us to make any comment on the evidence, other than that necessary to discuss the assignment of error upon which the case is reversed; nor is it necessary to discuss or rule upon the other assignments of error.

The ninth assignment of error is as follows:

"Because the Court committed prejudicial error in permitting the State to attack the Defendant's moral character by the introduction of testimony, over objection, relative to the Defendant's association and relationship with other women, such fact have no connection whatever with his guilt or innocence of homicide in any degree."

Defendant was convicted of the death of Anna Elsie Kelnhofer, a seventeen year old girl. Upon being arrested

defendant signed a written statement in which he claimed he had accidentally struck and killed deceased with his car as she was walking along a road near Tullahoma to go fishing; whereupon he panicked and hid the body. In this statement defendant claimed he had never seen the deceased prior to striking her.

The State was allowed to introduce the following line of proof over defendant's objection in regard to his association with other women; it having already been shown he was married and had children.

Kenneth J. Shelton a member of the T.B.I. investigated this case and in the course of the investigation on April 25, 1960 the defendant was questioned by Mr. Shelton and Sheriff Dan G. Daniel. During the course of this questioning defendant made a statement to these officers in substance as follows: That for a period of about two weeks prior to the death of deceased the husband of a certain Mrs. Frances Fincham was in jail, and during this time he dated her. After his release from jail Mr. Fincham called defendant's wife conveying to her this information, which upset her. The result was defendant promised his wife he would not go out with another woman, and his wife told him if he did she would leave him.

Sheriff Dan G. Daniel on this point testified to the same facts as Mr. Shelton.

Ernest Buford Fincham testified while in jail he learned his wife, Mrs. Frances Fincham was going with defendant, and upon his release conveyed this information to defendant's wife. He also stated he had talked to defendant about the matter, and said he told defendant if he heard of it again he would knock his teeth out.

Mrs. Frances Fincham testified she met defendant at a cafe and understood he was separated from his wife. She said the last time she had seen defendant was the day before he was arrested, and at this time he told her Mr. Fincham had called his wife, and also talked to him.

John L. Coleman testified he operated a cafe and was acquainted with defendant, who often came into his place of business. That on one occasion defendant left a message to the effect he could not see Mrs. Fincham as he was having trouble with his wife, "somebody had called her." The witness also testified that for a period of about a year defendant had been coming into his place with other women.

Barbara Ann Arnold testified she had dated defendant for about a year, and on several occasions parked with him near the place where deceased's body was found.

■ The State in answer to this assignment of error contends: (1) This testimony of Mr. Shelton and Sheriff Daniel is admissible to prove motive in that said testimony proved defendant knew his wife would leave him should she find out about his further association with other women, and to prevent this defendant had a reason to kill deceased; (2) The testimony of the other witnesses outlined above was not necessary, but was in fact merely cumulative; since this testimony did no more than show defendant an immoral person, and this had already been shown by the testimony of Mr. Shelton and Sheriff Daniel, and same was therefore not prejudicial.

■ Where motive of accused is important and material the courts have been very liberal in permitting the introduction of evidence proving or disproving same. As a

428

general rule evidence tending to show motive, even though prejudicial is always relevant and admissible, particularly in cases built wholly or partly on circumstantial evidence. 26 Am.Jur. page 373; 22A C.J.S. Criminal Law sec. 614, page 422.

█ Also as a general rule nothing shall be given in evidence, which does not directly tend to prove or disprove the matter at issue. *Wiley v. State,* 43 Tenn. 362.

█ This evidence offered by the State standing alone does not bear directly or indirectly on the issue of the guilt or innocence of defendant, and alone would not be relevant. If this evidence is to become relevant it will have to appear so when taken in connection with other evidence. The theory of the State is this evidence in connection with other evidence offered by the State, or reasonable and logical inferences to be drawn therefrom, tend to prove the guilt of defendant; and this evidence therefore becomes relevant.

It is the theory of the State evidence has been submitted from which the jury could find either from direct proof or from logical inference, that:

(1) Defendant hid the body of deceased and same was not found for about a week, when defendant pointed it out to officers.

(2) Defendant did not kill deceased by accidently striking her with his car, as he claimed in his written statement.

(3) Defendant did in fact pick up deceased in his car as she was walking along the road toward the river to go fishing.

Then having submitted evidence to establish these facts the motive of defendant becomes important and material in the issue of his guilt or innocence. The theory being that if the jury accepted the evidence submitted by the State they would find defendant did pick up deceased in his car; and with this evidence of motive before them the jury could infer defendant did in fact kill deceased to prevent his wife from finding out about his association with her.

It is true as insisted by the State, that it would be proper in proof of motive to show defendant was fearful his wife would leave him, if she found out about him going with other women, and the jury might infer under proper evidence defendant killed deceased to prevent this. The point in this matter that has caused us such great concern is the lack of evidence of association between defendant and deceased, upon which the jury could infer deceased was a person defendant might kill to prevent his wife from finding out about them.

In proof of defendant's association with deceased the State submitted the following testimony from the witnesses John L. Coleman and Barbara Ann Arnold:

"Witness-Coleman:

"Q. Mr. Coleman, did Mr. Ivey ever make any statement to you whether he knew the Kelnhofer girl?

"A. He knew her from a distance. He was not personally acquainted with her.

"Q. He knew her from a distance?

"A. Yes, sir.

"Witness-Arnold:

"Q. I'll ask you whether or not you asked Mr. Ivey whether he knew Anna Kelnhofer, was acquainted with her?

"A. I think he said he knew her by sight; he had seen her."

This testimony of the witnesses Coleman and Arnold on this point of prior association is so weak as to have no probative value. We have carefully examined the record and do not find any evidence of prior association between defendant and deceased. Then for this evidence of motive to have any logical connection with the guilt or innocence of defendant the jury would have to find defendant picked up deceased, a young girl he knew only by sight, as she walked along the road toward the river to go fishing about 9:30 in the morning. Then to prevent his wife finding out about this and leaving him defendant in fact did kill deceased.

In *Patton v. L. O. Brayton*, 184 Tenn. 592, 201 S.W.2d 981 the Court quoted with approval the following from 32 C.J.S. Evidence sec. 1044, pages 1131-1133:

"An inference can be drawn only from the facts in evidence, and cannot be based on surmise, speculation, conjecture, or guess; it must be reasonably drawn from, and supported by, the facts on which it purports to rest, and must be made in accordance with correct and common modes of reasoning. An inference has been required to be based on probabilities, and not on mere possibility or probabilities; but according to other authorities, probabilities, as distinguished from facts proved, will not support an inference."

In the case of *DeKalb County v. Tennessee Electric Power Co.*, 17 Tenn.App. 343, 67 S.W.2d 555, the Court made the following statement:

"The law requires an open, visible connection between the principal and evidentiary facts and the deduction from them, and does not permit a decision to be made on remote inferences."

In the case of *Central Bank & Trust Company. v. Alabama Broom & Mattress Co.,* 204 Ala. 410, 85 So. 738, the Court made the following statement:

"It is not enough for one who has the burden of proving a fact merely to show that it may have been, but he must go further and furnish some logical basis for the inference that it was or is."

It is true the facts in evidence furnish a basis from which the jury could draw the inference upon finding defendant picked up deceased in his car that morning; then he might or possibly could have killed her in fear of his wife finding out about his further association with other women. There is no proof in this record to furnish a logical basis for such an inference, and one so drawn on the evidence in this record would be based on no more than a mere possibility, and in fact would be speculation or conjecture.

In most cases it is not difficult to determine certain lines of evidence are clearly relevant, while other lines are clearly irrelevent. But a twilight zone is frequently found, where the problem is one of great difficulty. The admissibility of this evidence offered by the State in the instant case is in this twilight zone.

This evidence of association with various women brands the defendant as an immoral person and is in fact an attack on his character, when character was not in issue. In the case of *Anderson v. State,* 165 Tenn.

569, 56 S.W.2d 731, this Court quoted with approval the following statement in regard to the reason for not allowing evidence of bad character to be introduced in criminal cases, when character is not in issue:

"This doctrine is founded upon the wise policy of avoiding the unfair prejudice and unjust condemnation which such evidence might induce in the minds of the jury. If such testimony should be admitted, the defendant might be overwhelmed by prejudice instead of being tried upon evidence affirmatively showing his guilt by the specific offense with which he is charged." 165 Tenn. 569, 56 S.W.2d 731.

By common experience we know when evidence of immoral character is given against a defendant in a criminal trial there arises strong probability defendant will be prejudiced in the minds of the jury, and just for this reason admission of such evidence should be proceeded with under caution.

We have here evidence introduced to prove the motive of defendant, which evidence will likely prejudice the jury against defendant. And which evidence in order to become relevant to the main issue is made to depend upon an inference to be drawn by the jury, when the facts in issue do not support such an inference in more than a speculative manner. Under such circumstances any doubt should be resolved in favor of a defendant in a criminal case, and against the admissibility of the evidence.

The ninth assignment of error is sustained; the judgment reversed and the cause remanded for a new trial.