IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 19, 2021 Session

RICHARD E. MACK, ET AL. V. CABLE EQUIPMENT SERVICES, INC., ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-004954-14  Felicia Corbin Johnson, Judge**
———————————————

**No. W2020-00862-COA-R3-CV**
———————————————

This appeal arises from litigation involving an incident that occurred in 2010. Suit was originally filed in 2011. After a voluntary nonsuit, the complaint was refiled in 2014. Years later, the plaintiffs moved to amend their complaint to add additional defendants. The trial court granted leave to amend but reserved ruling on whether the claims against the new parties would relate back to the date of the original complaint under the provisions of Tennessee Rule of Civil Procedure 15.03. The amended complaint was filed in 2018. The newly added defendants moved to dismiss on the basis that none of the elements required for relation back under Rule 15.03 had been shown to exist. After a hearing, the trial judge agreed and provided an oral ruling in favor of the defendants. Before a written order was entered to that effect, the plaintiffs filed a notice of voluntary nonsuit without prejudice. The trial court subsequently entered an order granting the defendants' motion to dismiss. The trial court found that at that point in the proceeding, the allowance of a nonsuit was discretionary, and permitting a nonsuit after its oral ruling would have been unfairly prejudicial to the defendants. As such, it granted the motion to dismiss for failure to state a claim on the basis that the claims were barred by the statute of limitations and did not relate back to the filing of the original or refiled complaint. The plaintiffs filed motions to alter or amend or set aside the order, arguing that the trial court lost jurisdiction at the moment the plaintiffs filed their notice of nonsuit, and therefore, the order of dismissal was void. They also argued that the trial court impermissibly relied on facts that were not found within the amended complaint in resolving the motion to dismiss. The trial court denied both motions. The plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Larry E. Parrish, Memphis, Tennessee, for the appellants, Richard E. Mack and Carol T. Mack.

Bradley W. Eskins and Brie D. Wallace, Memphis, Tennessee, for the Defendants, Cable Equipment Services, Inc., Chuck Appeldoorn, and Marilyn Appeldoorn.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Plaintiffs Richard E. and Carol T. Mack originally filed this lawsuit on August 26, 2011. The Macks alleged that on August 29, 2010, "an agent of Comcast" named Anthony Pinedo came to their residence in an attempt to retrieve an "internet box." According to the complaint, the Macks had already instructed Mr. Pinedo to remain off the property, but unbeknownst to the Macks, he entered the residence anyway. The complaint alleges that Mrs. Mack confronted Mr. Pinedo inside the home and directed him to leave, but he refused. A confrontation ensued, and Mr. Mack admittedly began swinging a shovel toward Mr. Pinedo. The Macks claim that the shovel never hit Mr. Pinedo but that Mr. Pinedo fell off their porch while exiting the residence. The police were called. Mr. Pinedo told officers that he had been struck with the shovel, and Mr. Mack was arrested and taken to jail. According to the complaint, a Comcast supervisor who arrived on the scene continued to harass and threaten Mrs. Mack after her husband had been detained. The complaint alleged that the charges against Mr. Mack were eventually dismissed after Mr. Pinedo admitted during an evidentiary hearing that he had been instructed to remain off the property and that his supervisor told him to ignore that directive. However, the complaint states that Mr. Mack's mug shot was published in a newspaper and that he lost his job and his church leadership position as a result. This original complaint named as defendants Anthony Pinedo; John Doe Comcast Supervisor; Jane Doe Comcast Employee; Comcast Corporation; Comcast of Kentucky/Tennessee/Virginia, LLC; Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, Inc.; Comcast of Michigan/Mississippi/Tennessee; Comcast of Tennessee LP; and "John Does 1-10 consisting of entity-persons by and through which Comcast does business[.]" The complaint asserted claims for criminal trespass, assault, battery, false arrest, malicious prosecution, intentional infliction of emotional distress, and civil conspiracy between Comcast and the police officers.

In 2013, the Macks filed a notice of nonsuit without prejudice. The trial court entered an order of voluntary dismissal without prejudice on November 26, 2013. On November 24, 2014, the Macks refiled their complaint, naming the same defendants and asserting the same causes of action. On March 18, 2018, the Macks filed an amended

complaint, removing some defendants[1] but seeking to add as new defendants: Cable Equipment Services, Inc.; Chuck Appeldoorn d/b/a Cable Equipment Services; and Marilyn Appeldoorn d/b/a Cable Equipment Services. The amended complaint alleged that all of the defendants had "acted in concert and collaboration one with the other in execution and furtherance of a plan [] and purpose which included tortiously injuring the person and property of Mr. Mack and Mrs. Mack[.]" The amended complaint alleged that non-defendant Comcast Corporation had devised a plan "[p]rior to 2010 . . . and through the ongoing present" to recover cable boxes in former customers' dwellings while providing incentives that induced "selected persons" to use illegitimate means to recover them. The amended complaint alleged that Comcast purposefully characterized the plan collaborators as "independent contractors" in an attempt to evade liability for tortious acts committed by them. The amended complaint alleged that Comcast required Cable Equipment Services, Inc. ("CES") and Chuck and Marilyn Appeldoorn d/b/a CES to sign various documents stating that they were independent contractors before Comcast would permit them to "qualify" as a plan collaborator. Specifically, the amended complaint alleged that in 2007, Comcast had required CES and the Appeldoorns to sign a document entitled "Equipment [Recovery] Services Agreement" by which Comcast would exercise control over CES in furtherance of the plan. The amended complaint alleged that Comcast imposed various "controls" on CES and the Appeldoorns through its contract provisions. For instance, it alleged that Comcast required the use of identification badges and vehicle placards using the word "contractor." The amended complaint alleged that CES and the Appeldoorns had "used the same 'independent contractor' sham to engage additional Plan Collaborators," including Mr. Pinedo and the supervisor who was at the scene on the date of the incident in 2010. According to the amended complaint, Mr. Pinedo and the supervisor had both signed agreements with CES entitled, "Agreement for Services from Independent Contractor."

The amended complaint, filed in 2018, alleged that CES and the Appeldoorns "served as Plan Collaborators continuously from August 25, 2005 into November 2015." It acknowledged that CES had "ceased operating" in November 2015 but alleged that CES and the Appeldoorns had "never withdrawn from the conspiracy" even if they were "no longer active," and therefore, they remained liable for the tortious acts. The amended complaint alleged the same causes of action but added a claim for negligence in hiring and alleged a broader conspiracy. The amended complaint did not discuss the original or refiled complaints or the reason for the need to file an amended complaint.[2]

CES and the Appeldoorns ("Defendants") filed a motion to dismiss for failure to state a claim pursuant to Tennessee Rule of Civil Procedure 12.02(6). They alleged that

---

[1] The record before us contains very few documents from early in the proceedings. However, we note that this Court affirmed summary judgment in favor of some Comcast entity-defendants in *Mack v. Comcast Corp.*, No. W2017-02326-COA-R3-CV, 2018 WL 4191878 (Tenn. Ct. App. Aug. 31, 2018).

[2] The amended complaint simply referenced two exhibits to "the unamended Complaint."

- 3 -

the claims asserted against them in the amended complaint were barred by the statute of limitations and that the amended complaint did not meet the requirements for relation back under Tennessee Rule of Civil Procedure 15.03.[3] Defendants noted that the incident at the Mack residence occurred in 2010 and that they had not been named as defendants in the 2011 complaint or the 2014 refiled complaint. According to the motion, the trial court had granted the Macks leave to file an amended complaint but specifically stated that it would not yet rule on whether the claims in the amended complaint would relate back under Rule 15.03, and the court reserved ruling on that issue until the amended complaint was filed and the newly added defendants had an opportunity to appear and assert any opposition to relation back. Defendants argued that a one-year statute of limitations applied to all of the claims asserted in the 2018 complaint and therefore the claims arising out of the 2010 incident were clearly time-barred. They noted the allegation in the complaint itself that Mr. Pinedo and the supervisor had served as collaborators until 2015 when CES ceased operations.

Defendants also argued that none of the requirements for relation back under Rule 15.03 had been met. First, they asserted that the amended complaint raised a new theory that did not arise out of the same conduct, transaction, or occurrence. Next, they argued that the Macks had not met their burden of showing that Defendants had notice of the lawsuit within the statute of limitations or 120 days after commencement of the action such that they would not be prejudiced in maintaining a defense. To the contrary, Defendants argued that it would be highly prejudicial to add them to a lawsuit based on an incident that occurred more than seven years earlier when memories had faded, the defendant supervisor had died in the interim, and CES had ceased operations years earlier. They also argued that the Macks had failed to prove that Defendants knew or should have known that the action would have been brought against them but for a misnomer or mistake concerning identity. For all of these reasons, Defendants asked the trial court to dismiss the claims against them.

The Macks filed a response in opposition to the motion to dismiss, raising a host of arguments. They insisted that "relation back is not germane to the inquiry" because they had alleged an ongoing conspiracy with "no ascertainable last overt act," and therefore, in their view, the statute of limitations had not even begun to run. Alternatively, the Macks proceeded to "briefly discuss relation back." However, they insisted that the complaint was the only permissible "source for facts." Thus, the Macks asserted that Defendants had to "point the Court to exact language in the 2014 Complaint which, on its face, evidences an irrefutable expiration" of the statute of limitations. At the same time, however, the Macks stated that an affidavit and declaration had been filed in the case in 2017 that included as an exhibit a contract between CES and Comcast. The Macks stated that it

---

[3] "A Tenn. R. Civ. P. 12.02(6) motion is an appropriate way to seek to invoke the statute of limitations as grounds for dismissing a complaint." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 n.11 (Tenn. 2012).

would be "appropriate for the Court to make reference to" the affidavit and declaration to "assist" in its analysis of the Rule 12 motion. The Macks suggested that the language of the contract regarding indemnification and notice of claims would permit a jury to find that, if the parties had followed the contractual provisions, then notice of the lawsuit would have been provided to Defendants, and Defendants would have known that they were the "John Does 1-10" named therein. The Macks suggested that they did not learn the identity of Defendants until 2017. However, they did not submit any affidavit or evidence to that effect.

On May 18, 2018, the trial court held a hearing on the motion to dismiss. Counsel for the Macks again referred the court to the contract that had been attached to the affidavit filed earlier in the proceedings. Defendants objected to consideration of the contract and affidavit because the court was resolving a motion to dismiss based on the pleadings. The trial judge questioned counsel regarding whether consideration of matters beyond the four corners of the complaint, such as the contract, would convert the motion to one for summary judgment. They discussed whether consideration of the contract would require conversion from a Rule 12 motion to a Rule 56 motion. The trial judge ultimately took the matter under advisement but announced that she intended to consider the motion as one to dismiss and that if she decided to consider matters beyond the four corners of the complaint, she would notify the parties so that they could respond to the motion as one for summary judgment. After the hearing, the Macks filed a memorandum stating that were not seeking "a Rule 56.01 conversion." The Macks clarified their position that the trial court was limited to the four corners of the complaint. They suggested that the trial court was required to liberally construe the facts stated in the complaint to such an extent that consideration of the affidavit and declaration was not necessary. The Macks characterized the affidavit and declaration as "superfluous" and stated that their position was not dependent on the affidavit or declaration. They stated that the affidavit and declaration were "not referenced by the Macks as evidence necessary to be considered" for the motion to be denied.

On June 28, 2018, the trial judge announced her oral ruling that all of the Macks' claims against Defendants were dismissed for failure to state a claim based on the expiration of the statute of limitations. The trial judge requested that counsel for Defendants draft an order of dismissal. Once it was prepared, counsel for the Macks refused to sign the proposed order. Thereafter, the trial judge advised the attorneys that she intended to prepare her own order. Prior to the entry of a written order of dismissal, however, on September 5, 2018, the Macks filed a notice of nonsuit without prejudice. The notice stated that the Macks were dismissing their claims against CES and Chuck Appeldoorn but not Marilyn Appeldoorn. In response, Defendants filed a motion for entry of a final order *nunc pro tunc*. The Macks then filed a memorandum entitled, "Authorities on Oral Pronouncements of Courts and on Voluntary Nonsuit Force and Effect." The memorandum stated that "counsel for plaintiffs can speak with absolute certainty that the notice of nonsuit filed by plaintiffs[,] the instant the notice was filed, effectuated the

voluntary dismissal of all of the claims then pending against [CES] and Chuck Appeldoorn" and removed "100 percent of the Court's jurisdiction to take any steps or action" regarding those claims. Thus, the Macks insisted that the trial court had "no jurisdiction to enter an order granting the pending motion to dismiss" those claims. They claimed that "the dismissal, past tense, has already occurred" and that the court had no option but to enter a "purely ministerial . . . pro forma order" for the purpose of assessing costs and commencing the one-year period within which to refile. The Macks submitted pages and pages of additional arguments but stated that they could "assure the Court that there is no need for the court to read the additional pages" and that the court could "trust that plaintiffs have thoroughly researched their point." In closing, the Macks "very confidently assure[d] the Court that there is no exception to the rules stated."

On September 14, 2018, the trial court entered an order granting Defendants' motion to dismiss. At the outset, the trial court discussed the issues involving the oral ruling and the notice of nonsuit. The trial judge explained that she had issued her oral ruling on June 28, and after the dispute arose as to the proposed order, she had decided to draft her own order and advised counsel of the same. Prior to entry of the order, however, the Macks had filed the notice of nonsuit without prejudice. The order states that the trial judge held a conference call with the attorneys and permitted them to file briefs on the issue.

The order states that the court carefully reviewed Tennessee Rule of Civil Procedure 41.01, regarding voluntary dismissals, and caselaw interpreting the rule, and came to the conclusion that the court had not only jurisdiction but also the discretion to enter the order granting dismissal with prejudice despite the notice of nonsuit. Specifically, the court relied on *Hamilton v. Cook*, No. 02A01-9712-CV-00324, 1998 WL 704528, at *3 (Tenn. Ct. App. Oct. 12, 1998), another case in which a trial judge had orally announced a ruling granting a motion to dismiss for failure to state a claim, but after the hearing, the plaintiffs had filed a notice of nonsuit attempting to voluntarily dismiss their complaint without prejudice pursuant to Rule 41.01. Because the trial court relied on *Hamilton*, we will briefly discuss its facts and holding. The trial court in *Hamilton* had refused to allow the nonsuit and entered an order granting the motion to dismiss, in accordance with its earlier oral ruling. *Id.* On appeal, the plaintiffs had argued that "the action was voluntarily dismissed as a matter of right upon [the] filing of their Notice of Nonsuit." *Id.* The Court of Appeals framed the issue on appeal as "whether the [plaintiffs] had the right to take a voluntary nonsuit after the trial court orally announced its ruling dismissing the [plaintiffs'] complaint but before the court entered its written order of dismissal." *Id.* at *4. The appellate court explained that "in non-jury cases, the plaintiff has the right to take a voluntary dismissal until the matter has been finally submitted to the trial judge for decision," and "[o]nce the case finally has been submitted to the trial court for a determination on the merits, . . . the plaintiff no longer can take a voluntary dismissal as a matter of right." *Id.* (quotation omitted). Thus, "the Hamiltons no longer had the right to take a voluntary dismissal when they filed their notice of nonsuit" because "the Defendants' motion to dismiss already had been submitted to the trial court for a

determination on the merits and, in fact, the trial court had ruled on the Defendants' motion by announcing that it was dismissing the Hamiltons' complaint." *Id.* The Hamiltons had alternatively argued that even if they lost the *right* to a voluntary dismissal, the trial court had the authority to exercise its discretion to grant their request for a voluntary dismissal and abused its discretion by failing to do so. *Id.* at *5. The appellate court explained that when the ability to take a voluntary dismissal is in the discretion of the trial court, it should grant a voluntary dismissal "absent some showing of plain legal prejudice to the defendant" but should not grant a nonsuit if doing so would "deprive the defendant of some right that became vested during the pendency of the case." *Id.* at *5 (quotations omitted). The Court found that prejudice would result to the defendants if the Hamiltons were permitted to take a voluntary dismissal because they had already participated in a hearing on the motion to dismiss at which the defendants demonstrated valid defenses and the trial court issued its oral ruling dismissing all claims. *Id.* Under those circumstances, the Court reasoned, the trial court did not abuse its discretion in refusing to permit the Hamiltons to take a voluntary dismissal. *Id.*[4] After summarizing the facts and holding of *Hamilton*, the trial court noted that in this case, the Macks likewise sought to take a nonsuit after the court had already issued its oral ruling. As in *Hamilton,* the trial court found that a nonsuit at that juncture would be unfairly prejudicial to Defendants after they had prevailed on their motion to dismiss by showing meritorious defenses to all claims against them.

Next, the trial court proceeded to analyze the motion to dismiss for failure to state a claim based on the statute of limitations. The trial court found that all claims were barred by the one-year statute of limitations. The trial court noted that the incident giving rise to the causes of action occurred in 2010 and found that the statute of limitation began to run at that time. It noted that the amended complaint was filed in 2018, roughly seven years after the incident, six years after the case began, and three years after it was refiled. The trial court noted that the amended complaint alleged that the last overt act of the conspiracy had not yet occurred, but the trial court found that the complaint established "on its face" that the action causing the harm occurred in 2010 and that CES ceased operations in November 2015. Even if the last overt act occurred at that time, the trial court found, the statute of limitations would have run in November 2016, well before the amended complaint. The trial court further noted that conspiracy claims require an underlying predicate tort, and that all other claims asserted by the Macks were time-barred.

The trial court noted the Macks' alternative position that the claims would relate

---

[4] We note that the *Hamilton* decision was recently followed by this Court in *Irvin v. Green Wise Homes, LLC*, No. M2019-02232-COA-R3-CV, 2021 WL 709782, at *7-10 (Tenn. Ct. App. Feb. 24, 2021) *perm. app. denied* (Tenn. June 9, 2021), as we found the facts of *Hamilton* "nearly identical" to those in *Irvin. See id.* ("Like the *Hamilton* court, we conclude that in this case, Green Wise lost the ability to take a nonsuit as a matter of right after the trial court orally granted Appellee's motion to dismiss Green Wise's claims. . . . We also conclude [] that the trial court did not err in declining to allow Green Wise to voluntarily dismiss its claims after the oral ruling was issued. . . . This scenario was squarely addressed in *Hamilton*, and Green Wise has presented us with no legal authority suggesting we should depart from that holding.").

- 7 -

back but concluded that they did not. The trial court pointed out that there are several requirements that must be met for an amended complaint adding new parties to relate back and found that the Macks "did not meet these requirements." First, the trial court found that the amended complaint raised "an entirely new theory of the case" and did not arise out of the same conduct, transaction, or occurrence. Next, the trial court found that the Macks failed to meet the two-pronged test of Rule 15.03 for relation back when adding new defendants: first, that the defendants had notice of the lawsuit within the statute of limitations or 120 days after commencement of the action such that they would not be prejudiced in their defense, and secondly, that the defendants knew or should have known that but for a misnomer or mistake they would have been sued. The trial court found that the Macks "have not provided any evidence that the defendants received notice of the lawsuit" in the specified time period. It also found that the Macks "did not demonstrate a misnomer or mistake as required by the second prong of the test." Finally, the trial court found that the Macks, as the parties seeking to amend, failed to demonstrate an absence of prejudice to Defendants. The trial court found that the amendment would be highly prejudicial given the fact that seven years had passed since the incident, CES had ceased operations, and Defendants would have to defend against claims of which they had no knowledge. For all of these various reasons, the trial court found that the claims did not relate back and were time-barred. The trial court certified its order as final pursuant to Tennessee Rule of Civil Procedure 54.02.

On October 12, 2018, the Macks filed a motion to alter or amend and a motion to set aside. The Macks characterized the order of dismissal as an "ostensible, but void, order purporting to dismiss plaintiffs' claims for relief." The Macks asserted that the dismissal order should be set aside as void. They maintained that from the moment they filed their notice of nonsuit, "Defendant CES and Defendant C. Appeldoorn were not parties" and all claims for relief against them "were former claims, having been voluntarily dismissed by Movants; so on September 14, 2018, there were no pending claims of Movants . . . for the Court to dismiss." The Macks asserted that the trial court lost subject matter jurisdiction and that its order of dismissal was void ab initio. Alternatively, in the motion to alter or amend, the Macks argued that the trial court had impermissibly stated as facts, in its order of dismissal, "facts unfound in the Amended Complaint." These post-judgment motions went unresolved for some time, and on December 16, 2019, the Macks filed an additional memorandum in support of their motions that exceeded one hundred pages, followed by two additional memoranda and a list of supplemental authorities in the days that followed. The trial court denied the post-judgment motions by order entered on May 24, 2020. The Macks timely filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

The Macks present only two narrow issues on appeal, which we quote from their brief:

1.     In a case where the plaintiff has demanded a jury trial and the only Tennessee Rules of Civil Procedure, Rule 7.01 pleading filed is a complaint, amended by leave of the trial court, not dismissed by an entered order of the court, *the moment the plaintiff gives effective notice of a Tennessee Rules of Civil Procedure, Rule 41.01 voluntary dismissal (nonsuit) does the trial court lose all subject matter jurisdiction* to adjudicate any issue affecting the nonsuiting plaintiff, save only the entry of a pro forma order confirming the already-effective voluntary dismissal (nonsuit)? Appellants contend that the answer to this question is YES, the trial court lose[s] all subject matter jurisdiction as stated.

2.     In adjudicating a Tennessee Rules of Civil Procedure, Rule 12.02(6) ("Rule 12.06 Motion") motion to dismiss the Tennessee Rules of Civil Procedure, Rule 7.01 ("Rule 7.01 Complaint") amended complaint, for failure to state a claim on which relief can be granted, as a basis for dismissing the complaint, *does the trial court commit reversible error, if the trial court relies on facts not found within the four corners of the complaint?* Appellants contend that the answer to this question is YES, the dismissal is reversible.

(emphasis ours). For the following reasons, we affirm the decision of the circuit court and remand for further proceedings.

## III.    DISCUSSION

### A.    *Subject Matter Jurisdiction*

From the time that the Macks filed their notice of nonsuit on September 5, 2018, they have insisted that the trial court instantaneously lost subject matter jurisdiction over the claims they sought to voluntarily dismiss. In the memorandum they submitted to the trial court, they summarized their position as follows:

> Again, with all due respect for the Court, counsel for plaintiffs can speak with absolute certainty that the notice of nonsuit filed by plaintiffs the instant the notice was filed, effectuated the voluntary dismissal of all claims then pending against [CES] and Chuck Appeldoorn. The instant the notice of nonsuit was filed, 100 percent of the Court's jurisdiction to take any steps or action as if [CES] and Chuck Appeldoorn remained parties in the instant case [sic]. In other words, the Court has no jurisdiction to enter an order granting the pending motion to dismiss claims against [CES] and Chuck Appeldoorn.
>
> The necessity for the Court to enter an order confirming the nonsuit

has nothing to do with the fact that the dismissal, past tense, has already occurred. The order required to be entered by the Court is nothing the Court has any discretion to do or not do. The entry of the order is purely ministerial, and the order is nothing more than a pro forma order, the purpose of which is to assess cost and trigger the onset of the one-year statute of limitations within which to refile.

Thus, despite the fact that the *Hamilton* case was precisely on point, procedurally, the Macks focused on subject matter jurisdiction. They contended that once they filed their notice of nonsuit against CES and Chuck Appeldoorn, those two defendants "were not parties" to the suit anymore, and "there were no pending claims" against them for the trial court to dismiss. According to the Macks, they had the ability to "extricate themselves" from the trial judge's "orally announced ruling" by filing the notice of nonsuit because the notice of nonsuit had "automatic effect" and "took the jurisdiction out from under the court." They argued, "A nonsuit [is] available to the Macks for the taking, and [] neither the Court nor Your Honor could stop the nonsuit from being a past-tense reality the instance the notice of nonsuit was filed." Thus, the Macks maintain on appeal that the trial court's subsequent order of dismissal was void ab initio for lack of subject matter jurisdiction.

Despite all of the caselaw submitted by the Macks during this litigation, and counsel's assurances about the reliability of his research, the Macks never cited, before the trial court or on appeal, *Autin v. Goetz*, 524 S.W.3d 617 (Tenn. Ct. App. 2017), which we find particularly instructive. In that case, appellant Goetz similarly argued that a "notice of nonsuit deprived the trial court of subject matter jurisdiction to enter any orders other than an order of voluntary dismissal." *Id.* at 630. Specifically, Goetz argued that "[t]he dismissal of a nonsuited case occurs instantaneously when a plaintiff delivers the notice of nonsuit," and "the moment the nonsuit was filed[,] the [trial court] had only very limited authority (and duty) to enter a pro forma ministerial order acknowledging [Defendants'] decision to nonsuit." *Id.* at 632. We stated, "Respectfully, we cannot agree with either contention." *Id.* "First," we explained that even in circumstances when the plaintiff has the unqualified right to take a nonsuit, "the mere exercise of that right does not, ipso facto, lead to the conclusion that the nonsuit is accomplished immediately upon delivery of the notice." *Id.* "Thus, while the plaintiff had the unqualified right to take a nonsuit, the voluntary dismissal was not actually accomplished until the trial court's signed order confirming the nonsuit was entered. Mr. Goetz's argument that the dismissal occurred 'instantaneously' with the notice of nonsuit [was] therefore unavailing." *Id.* at 632-33. We added, "We also cannot agree that [the caselaw cited by Goetz] stands for the proposition that the filing of a notice of nonsuit deprives the trial court of jurisdiction to enter any additional orders in the case other than an order confirming the voluntary dismissal." *Id.* at 633. We explained that "a nonsuit does not take effect until the entry of the order of nonsuit, rather than at the time the notice of voluntary dismissal is filed," and accordingly, "the notice of nonsuit does not immediately divest the trial court of jurisdiction to enter further orders in the case, including orders of protection." *Id.* at 637. As a result, "[t]he

- 10 -

trial court retained jurisdiction to extend and modify the protective order . . . notwithstanding Appellees' choice to voluntarily dismiss their cause of action," and "the trial court's March 9, 2012 order extending the initial protection order and the subsequent August 27, 2012 order amending the March 9, 2012 order were not void on their face." *Id.* at 638.[5]

More recently, this Court rejected a similar argument regarding a trial judge's authority following a notice of voluntary dismissal in *Purswani v. Purswani*, 585 S.W.3d 907 (Tenn. Ct. App. 2019). During those proceedings, the wife filed a handwritten "Notice of Voluntary Dismissal with Prejudice" on two separate occasions. *Id.* at 910. Nevertheless, the trial court clerk issued a subpoena directing the wife to appear for a hearing. *Id.* The husband argued that the trial court improperly scheduled the hearing after the wife had filed notices of voluntary dismissal. *Id.* The wife subsequently submitted a handwritten document stating that she had not willingly filed the notices of voluntary dismissal and that her husband had forced her to do so. *Id.* at 911. Still, the husband argued that "the case should be considered closed" because of the notices of voluntary dismissal. *Id.* He argued that Tennessee Rule of Civil Procedure 41 "precluded the trial court from taking any other actions in the matter beyond ministerial or ancillary acts." *Id.* The trial court found that the wife did not want to dismiss her petition and denied the husband's motion to dismiss. *Id.* On appeal, the husband maintained that the trial court erred by conducting further proceedings after the wife filed the notices of voluntary dismissal. *Id.* at 913. He insisted that "the trial court did not have the authority, based on Tennessee Rule of Civil Procedure 41.01, to conduct further proceedings once Wife had 'dismissed the case(s)'" by filing the notices. *Id.* at 914. We disagreed, stating that "Husband's argument misapprehends the procedure embodied in Tennessee Rule of Civil Procedure 41.01 concerning voluntary dismissals." *Id.* We explained that in 2004, Rule 41.01 was amended to add a new subsection stating, "A voluntary nonsuit to dismiss an action without prejudice must be followed by an order of voluntary dismissal signed by the court and entered by the clerk. The date of entry of the order will govern the running of pertinent time periods." *Id.* We also noted that when examining the time period for an appeal in such cases, the Tennessee Supreme Court had observed:

> If filing a notice of voluntary nonsuit was all that was required to conclude an action, the Court of Appeals could then receive the appeal without the trial court ever entering an order or assessing costs. Such a holding would be

---

[5] Counsel for the Macks is keenly aware of this Court's 2017 decision in *Autin v. Goetz* because he has represented Goetz in related litigation before and after that decision. *See, e.g.*, *In re March 9, 2012 Order*, No. W2019-01923-COA-R3-CV, 2020 WL 7861377 (Tenn. Ct. App. Dec. 22, 2020) *perm. app. denied* (Tenn. Apr. 8, 2021); *Goetz v. Autin*, No. W2015-00063-COA-R3-CV, 2016 WL 537818 (Tenn. Ct. App. Feb. 10, 2016) *perm. app. denied* (Tenn. June 24, 2016). In *In re March 9, 2012 Order*, we explained that the parties to the Autin-Goetz cases and the related *In re March 9, 2012 Order* cases are former neighbors who have been embroiled in litigation for a decade and before this Court many times. 2020 WL 7861377, at *1.

contrary to common sense and our own precedent. As the Court of Appeals correctly noted in *Evans*, a "[c]ourt speaks only through its written judgments, duly entered upon its minutes." *Evans* [*v. Perkey*,] 647 S.W.2d [636,] 641 [(Tenn. Ct. App. 1982)]; *see also Ivey v. State*, 210 Tenn. 422, 360 S.W.2d 1, 2 (1962); *Lewis ex rel. Lewis v. Brooks*, 66 S.W.3d 883, 886 (Tenn. Ct. App. 2001); *City of Newport v. Masengill Auction Co.*, 19 S.W.3d 789, 795 (Tenn. Ct. App. 1999).

*Id.* at 915 (quoting *Green v. Moore*, 101 S.W.3d 415, 420 (Tenn. 2003)). Thus, in *Purswani*, this Court concluded that "the notices of voluntary dismissal filed by Wife were ineffective, standing alone, to function as a complete adjudication of Wife's petitions." *Id.* "[A] motion for voluntary dismissal must be confirmed by entry of an order from the court before the action is concluded." *Id.* As such, "the trial court possessed the authority to take whatever actions were necessary to proceed to a hearing on the merits because Wife withdrew her notices of voluntary dismissal before the trial court had entered an order of dismissal." *Id.* at 915-16.

Likewise, in *Garen v. Bowman*, No. M2010-00512-COA-R3-CV, 2010 WL 4024907, at *2 (Tenn. Ct. App. Oct. 12, 2010) *perm. app. denied* (Tenn. Mar. 9, 2011), we rejected an appellant's argument that "once the plaintiff gave notice of a voluntary dismissal, the trial court lacked jurisdiction to perform any act in suit 1 other than to enter an order of nonsuit." We explained, "Pursuant to Tenn. R. Civ. P. 41.01(3), the entry of an order of voluntary dismissal is required before the voluntary dismissal takes effect. Until that time, the lawsuit remains pending." *Id.* Thus, "the voluntary dismissal did not take effect absent a written order." *Id.*

Again, the narrow issue raised on appeal by the Macks is whether "the moment the plaintiff gives effective notice of a Tennessee Rules of Civil Procedure, Rule 41.01 voluntary dismissal (nonsuit) . . . the trial court lose[s] all subject matter jurisdiction to adjudicate any issue affecting the nonsuiting plaintiff, save only the entry of a pro forma order confirming the already-effective voluntary dismissal (nonsuit)." For the reasons set forth in *Autin*, *Purswani*, and *Garen*, the trial court did not instantaneously lose subject matter jurisdiction, and its subsequent order of dismissal with prejudice was not void. We note that the Macks do not present any non-jurisdictional issue seeking review of the merits of the trial court's rulings that they were no longer entitled to take a nonsuit as of right, that the court had discretion regarding whether to permit a nonsuit, and that allowing a nonsuit after the trial court had issued an oral ruling on the motion to dismiss would be unfairly prejudicial, in accordance with the reasoning of *Hamilton*. As such, we do not reach those issues. The trial court was not deprived of subject matter jurisdiction as the Macks assert.

## B.   *Reliance on Facts Beyond the Amended Complaint*

The second issue raised on appeal by the Macks bears repeating:

In adjudicating a Tennessee Rules of Civil Procedure, Rule 12.02(6) ("Rule 12.06 Motion") motion to dismiss the Tennessee Rules of Civil Procedure, Rule 7.01 ("Rule 7.01 Complaint") amended complaint, for failure to state a claim on which relief can be granted, as a basis for dismissing the complaint, does the trial court commit reversible error, if the trial court relies on facts not found within the four corners of the complaint?

Again, we emphasize the narrowness of this issue. The Macks assert that the trial court committed reversible error by "rel[ying] on facts not found within the four corners of the complaint." Their precise argument with respect to this issue was a bit unclear from their brief. After quoting caselaw stating that a motion to dismiss must be resolved by examining "the pleadings alone," the Macks argued that "there is only a single Rule 7.01 pleading at issue, i.e., the Complaint (RoA Vol.II at 264)," referencing the amended complaint. They argued that the amended complaint stated "the only facts determinative of this appeal." The Macks argued that the trial court erred by "mak[ing] findings of fact not able to be sourced to the four corners" of the amended complaint. The Macks set forth nearly four pages of direct quotations from the trial court's order of dismissal and stated that none of those facts "can be sourced to any place in the 224 paragraphs of the Complaint (RoA Vol.II at 264-309)." For instance, the Macks noted that the order of dismissal found that they waited seven and a half years to file their amended complaint, which was six years after the filing of the original complaint and nearly three years after the refiled complaint. The Macks argued that these facts cannot be found anywhere in the amended complaint itself. They also pointed to several portions of the order of dismissal describing what had been alleged and who had been named as defendants in the 2014 complaint, and they noted that this information cannot be found within the amended complaint itself. Thus, the Macks' argument initially appeared to be that the trial court could not consider the previous complaints they filed. In fact, they argued in their reply brief that "going into the record of cases to ascertain facts not within the 4-corners of the complaint is an impermissible inquiry." Their reply brief stated, "For instance, what the Prayer For Relief in the since-amended original Petition pled is wholly beyond the 4-corners of [the] Amended Petition, *a fortiori*, is a fact (accurate or not accurate) beyond the scope of facts able to be referenced[.]" However, during oral argument before this court, counsel was asked specifically if it was his position that when considering a Rule 12 motion, a trial court cannot consider "the prior complaints" or "the earlier complaints" found in the record of the same case. Counsel said "no" and that the earlier complaints were "relevant and fair game." Thus, we conclude that any issue regarding the trial court being limited to considering only the *amended* complaint has been abandoned.[6]

---

[6] In any event, we note that for a Rule 12 motion to dismiss, Tennessee cases "have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Elvis Presley Enterprises, Inc. v. City of Memphis*, 620 S.W.3d 318, 322 n.4 (Tenn. 2021); *see also State ex rel. Larry E. Parrish, P.C. v. Cox*, No. M2021-00029-

Next, within its list of facts found by the trial court that could not be sourced to the amended complaint, the Macks argued that the trial court's dismissal order improperly found that CES had ceased operations. According to the Macks, "There is not word one in the Complaint (RoA Vol.II at 264) that states that CES ceased business; yet, the dismissal order is based on a fact, from some other place other than the four corners of the Complaint (RoA Vol.II at 264) . . . that CES ceased business." However, the record on appeal simply does not support their assertion. On page 44 of the amended complaint, in paragraph 221, they alleged, "Though *Collaborator CES ceased operating in November 2015*, neither Collaborator CES, Collaborator C. Appeldoorn nor Collaborator M. Appeldoorn have ceased being Non-Defendants, even if Collaborator CES, Collaborator C. Appeldoorn nor Collaborator M. Appeldoorn are no longer active . . . ." (emphasis added). This issue is without merit.

Finally, within the list of facts that allegedly could not be sourced to the amended complaint, the Macks listed the trial court's findings that they had not provided any evidence that the newly added defendants had notice of the lawsuit or that there was a misnomer or mistake; that the Defendants would be "unfairly prejudiced" by having to defend claims for which they had no knowledge; that the amended complaint substantively raised a new cause of action; that the amended complaint did not arise out of the same conduct or transaction; and that the underlying tort claims were time-barred. The Macks argue that there were "zero facts pled within the four corners of the Complaint (RoA Vol.II at 264)" showing that Defendants "lacked knowledge sufficient to satisfy the relation-back elements." They argue that nothing in the amended complaint stated that there was *not* a misnomer, and that at this stage of the proceeding, "it was not up to the plaintiffs to demonstrate a misnomer." They also argue that considering whether there was "unfair prejudice" was not an appropriate standard for dismissal of the complaint. The Macks argue that "when the only question the Court is allowed to answer in a Rule 12.02(6) assessment is whether the Complaint (RoA Vol.II at 264) states a claim, . . . what difference does it make at what point in time [Defendants] had what knowledge?" They argue that "[a]ll issues related to the application of the relation-back doctrine" are "not facts determinable by the court in the context of a Rule 12.02(6) motion."

Again, we must view the Macks' arguments through the lens of the issue they presented on appeal – whether the trial court impermissibly "relie[d] on facts not found within the four corners of the complaint" by considering these issues, constituting reversible error. We conclude that it did not.

COA-R3-CV, 2021 WL 4449076, at *2 (Tenn. Ct. App. Sept. 29, 2021) (noting that the appellant took "particular umbrage at the fact that other judicial proceedings were referenced by the court in its order of dismissal" and argued on appeal that the court was "penned inside the Amended Complaint . . . with no openings from which to peer out," but finding this argument misplaced because "[i]t is well-settled law that courts may consider, among other things, items subject to judicial notice and matters of public record when ruling on a motion to dismiss without converting it into one for summary judgment").

"Pursuant to Rule 15.03 of the Tennessee Rules of Civil Procedure, only under certain conditions will an amended complaint relate back to a previously-filed complaint to comply with the statute of limitations." *Black v. Khel*, No. W2020-00228-COA-R3-CV, 2020 WL 7786951, at *2 (Tenn. Ct. App. Dec. 30, 2020) *perm. app. denied* (Tenn. Apr. 8, 2021). The Tennessee Supreme Court discussed the requirements of Tennessee Rule of Civil Procedure 15.03 in *Sallee v. Barrett*, 171 S.W.3d 822 (Tenn. 2005):

> Rule 15.03 of Tennessee Rules of Civil Procedure explains when an amendment changing a party relates back to the date of the original pleading:
>
> > Whenever the claim or defense asserted in amended pleadings arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party or the naming of the party . . . against whom a claim is asserted relates back if the foregoing provision is satisfied and if, within the period provided by law for commencing an action or within 120 days after commencement of the action, the party to be brought in by amendment (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the *identity* of the proper party, the action would have been brought against the party.
>
> (Emphasis added.)
>
> Thus, Rule 15.03 presents a two-pronged test which must be met in order for an amendment to change the party against whom the claim is asserted. First, the new party must have received sufficient notice of the action within the specified time-frame so that it will not be prejudiced in maintaining its defense. *See Doyle* [*v. Frost*, 49 S.W.3d 853, 856-57 (Tenn. 2001)]; *Smith v. Southeastern Props. Ltd.*, 776 S.W.2d 106, 109 (Tenn. Ct. App. 1989). . . .
>
> However, Rule 15.03 requires more than simply showing that the potential new defendant had been made sufficiently aware of the commencement of the action. "The second requirement is that each potential new party must have known that but for a misnomer or mistake concerning his or her identity, the action would have been brought against him or her." *Rainey Bros. Constr. Co. v. Memphis & Shelby County Bd. of Adjustment*, 821 S.W.2d 938, 941 (Tenn. Ct. App. 1991) (citing *Lease v. Tipton*, 722 S.W.2d 379, 380 (Tenn. 1986)). "A 'mistake' within the meaning of this rule does not exist merely because a party who may be liable for conduct alleged in the original complaint was omitted as a party defendant." *Smith*, 776

- 15 -

S.W.2d at 109; *see also Lease*, 722 S.W.2d at 380 (holding that plaintiff's motion to amend her complaint to add her husband as a defendant did not relate back because her failure to sue her husband was not due to misnomer or mistake involving the identity of the proper party, but because the law at the time of the complaint did not allow one spouse to sue another in tort).

It is the plaintiff that has the burden of showing that the failure to name the new defendant in the original complaint resulted from a mistake concerning the identity of the proper party. *Rainey Bros. Constr. Co.*, 821 S.W.2d at 941 (citing *Smith*, 776 S.W.2d 106).

*Id.* at 830-31. Thus, under Rule 15.03, there are actually three requirements that must be met:

an amended complaint changing the name of a party relates back to the date of the original pleading if three requirements are met: "(1) the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading ... if, within the period provided by law for commencing the action against him, the party to be brought in by amendment (2) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (3) knew or should have known that, but for a misnomer or other similar mistake concerning the identity of the proper party, the action would have been brought against him."

*Floyd v. Rentrop*, 675 S.W.2d 165, 167-68 (Tenn. 1984).

Because Defendants moved to dismiss the amended complaint for failure to state a claim on the basis of the statute of limitations and the failure of the Macks to show the elements necessary for relation back, the trial court did not err by considering the elements relevant to that analysis in the context of the motion to dismiss. *See, e.g.*, *Black*, 2020 WL 7786951, at *2-3 (affirming a trial court's dismissal of an amended complaint pursuant to Rule 12 on the basis that it was not filed within the statute of limitations and did not relate back to the original complaint when the plaintiff presented only arguments of counsel and there was no evidence to establish the elements for relation back); *Johnson v. Trane U.S. Inc.*, No. W2011-01236-COA-R3-CV, 2013 WL 4436396, at *3-4 (Tenn. Ct. App. Aug. 19, 2013) (concluding that the trial court properly granted a motion to dismiss an amended complaint because there was nothing in the record to show the necessary elements for relation back under Rule 15.03); *Jones v. Montclair Hotels Tenn., LLC*, No. M2006-01767-COA-R3-CV, 2007 WL 4322009, at *3-6 (Tenn. Ct. App. Dec. 5, 2007) (affirming dismissal of an amended complaint for failure to state a claim because the plaintiffs "did not meet their burden of proving that the relation back feature of Tennessee Rule of Civil Procedure 15.03 applies to save their claims from the statute of limitations"); *White v. Bacon*, No. M2004-02110-COA-R3-CV, 2006 WL 211810, at *8 (Tenn. Ct. App. Jan. 26,

2006) (affirming dismissal where the plaintiff "failed to present any evidence" to show that an element required for relation back applied); *Turner v. Aldor Co. of Nashville*, 827 S.W.2d 318, 320-23 (Tenn. Ct. App. 1991) (concluding on interlocutory appeal that a trial court erred in denying a motion to dismiss where the plaintiff failed to show two elements necessary for relation back, and observing that "[t]his appeal involves another instance where a plaintiff, faced with the dismissal of its complaint, is seeking to use . . . the relation back features of Tenn. R. Civ. P. 15.03 to deflect a statute of limitations defense"); *Rainey Bros.*, 821 S.W.2d at 941 (concluding that the trial court properly granted a motion to dismiss because the plaintiff failed to show the second element for relation back). Moreover, the Macks have not shown that the trial court "relie[d] on facts not found within the four corners of the complaint" in its analysis of these elements. The trial court found that the Macks failed to meet their burden of proving the necessary elements. For example, it found no notice because the Macks failed to prove it. *See, e.g.*, *Turner*, 827 S.W.2d at 322 ("[Plaintiff] offered no other proof that [New Defendant] knew of these claims by other means. Thus, the only conclusion to be drawn is that [New Defendant] did not have timely notice of [Plaintiff's] negligence and strict liability claims.").

It was counsel for the Macks who represented to the trial judge that he did not desire a Rule 56 conversion and that it was not necessary for the court to consider extraneous documents. The trial judge stated that she did not intend to consider any extraneous information and that she would notify the parties if she did. *Cf. Hensley v. Stokely Hosp. Properties, Inc.*, No. E2019-02146-COA-R3-CV, 2020 WL 5415483, at *1-2 (Tenn. Ct. App. Sept. 9, 2020) (reviewing a trial court's decision on relation back as one for summary judgment where the trial court considered an affidavit regarding notice and converted the motion to dismiss to one for summary judgment). We find nothing to indicate that she relied on facts not found within the complaint or the prior complaints.

In summary, we reject the Macks' argument that the trial court committed reversible error by "rel[ying] on facts not found within the four corners of the complaint." We discern no reversible error with respect to this issue.

## IV. CONCLUSION

We recognize that the Macks appear to suggest other errors throughout the body of their 64-page brief on appeal and in their reply brief. However, regarding the merits of the dismissal, the only issue designated for review on appeal was, when resolving a Rule 12.02(6) motion to dismiss an amended complaint, "does the trial court commit reversible error, if the trial court relies on facts not found within the four corners of the complaint?" Therefore, any other issues are waived. *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) ("[A]n issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)"). For the same reason, we decline to award attorney's fees to Defendants on appeal. *See id.*

- 17 -

The decision of the circuit court is affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellants, Richard E. Mack and Carol T. Mack, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE